2006 OK 29

**BROADWAY CLINIC,**
**Plaintiff/Appellant,**

v.

**LIBERTY MUTUAL INSURANCE**
**COMPANY, Defendant/Appellee.**

No. 101,572.

Supreme Court of Oklahoma.

May 9, 2006.

Rehearing Denied June 26, 2006.

Timothy A. Heefner and Jennifer A. Bruner, Goolsby, Olson & Proctor, P.C., Oklahoma City, for plaintiff/appellant.

Albert L. Tait, Jr. and J. Mark McAlester, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for defendant/appellee.[1]

1. Identified herein are those counsel for the par ties whose names appear on the briefs filed in

OPALA, J.

¶ 1 The dispositive issue presented in this appeal is whether a statutory physician's lien attaches to the proceeds of a patient's uninsured motorist coverage. We answer in the affirmative.

## I

### THE ANATOMY OF LITIGATION

¶ 2 Tijuana Johnson (Johnson) was injured in an automobile accident in September 2001. After providing Johnson with accident-related medical treatment, the Broadway Clinic (Clinic or plaintiff) filed (in the office of the Oklahoma County Clerk) a 42 O.S.2001 § 46 lien [2] [called a § 46 physician's lien] against any payment Johnson might receive for her injuries from the tortfeasor or from an insurer.[3] Johnson asserted a claim against her automobile insurer, Liberty Mutual Insurance Company (Liberty Mutual or defendant) to recover benefits under both the medical payments coverage and the uninsured/underinsured motorist (UM) coverage of her policy.

¶ 3 In April 2002, Liberty Mutual paid the Clinic $1,000.00 under Johnson's medical payments coverage, leaving an outstanding balance for medical services rendered · to Johnson of $902.00. Later that same month, Liberty Mutual issued a check to Johnson alone in the amount of $4,200.00, representing proceeds from Johnson's UM coverage. In July 2002, Liberty Mutual informed the

Clinic that it had settled Johnson's UM claim and had disbursed the funds to her.

¶ 4 The Clinic filed a small-claim proceeding against Liberty Mutual seeking a declaration that its lien attached to Johnson's UM benefits and to enforce the lien. At a hearing on 20 August 2004, the parties stipulated to the facts and presented their opposing legal arguments to Roma M. McElwee, trial judge, on the question of whether a § 46(B) physician's lien is enforceable against UM indemnity. The trial judge ruled in the negative and pronounced judgment for defendant. Plaintiff brought this appeal, which stands retained for this court's disposition.

¶ 5 We now hold that the provisions of 42 O.S.2001 § 46(B), which authorize a lien in favor of a physician · upon proceeds payable by an insurer, include within their ambit the proceeds of a patient's UM coverage. We hence reverse the trial court's judgment and direct the trial judge to proceed, upon remand, in a manner consistent with today's pronouncement.

## II

### STANDARD OF REVIEW

¶ 6 The facts relevant to this appeal are undisputed, having been submitted to the trial court by stipulation. The issue before us is one of law in which we must determine whether a statutory physician's lien is enforceable against UM indemnity. Contested

this court.

2. The provisions of 42 O.S.2001 § 46 state in pertinent part:

A. Every physician who performs medical services for any person injured as a result of the negligence or act of another, shall, if the injured person asserts or maintains a claim against such other person for damages on account of such injuries, have a lien for the amount due for such medical services upon that part going or belonging to the injured person of any recovery or sum had or collected or to be collected by the injured person, or by his heirs, personal representative, or next of kin in the event of his death, whether by judgment, settlement, or compromise. Such lien shall be inferior to any lien or claim of any attorney handling the claim for or on behalf of the injured person. The lien shall not be ap-

plied or considered valid against any claim for amounts due pursuant to the provisions of Title 85 of the Oklahoma Statutes.
B. *In addition to the lien provided for in subsection A of this section, every physician who performs medical services for any person injured as a result of the negligence or act of another, shall have, if the injured person asserts or maintains a claim against an insurer, a lien for the amount due for such medical services upon any monies payable by the insurer to the injured person.*

3. The dissent asserts that the lien at issue was not properly perfected and is therefore invalid and unenforceable. For the reasons expressed *infra*, we decline to opine upon plaintiff's compliance with the statutory requirements for perfection of a § 46(B) lien and confine today's pronouncement to the ground of decision upon which the district court's judgment rests.

issues of law stand before us for *de novo* review.[4] When examining a trial court's legal rulings, an appellate court exercises plenary independent and non-deferential authority.[5]

## III

### THE PARTIES' CONTENTIONS

¶ 7 Defendant urges us to sustain the trial court's construction of § 46(B) to exclude a patient's UM carrier. Defendant contends that § 46(A) creates a class of persons—tortfeasors—which controls and limits the persons to whom both § 46(A) and § 46(B) apply. Read in conjunction with § 46(A), defendant asserts, it is clear that the legislature intended § 46(B) to apply only to the *tortfeasor's* insurer, not to insurance purchased by the patient.

¶ 8 Defendant also argues that Oklahoma jurisprudence involving other types of statutory liens has consistently denied the lienholder access to the proceeds of UM coverage. In support of this contention, defendant cites this court's decision in *Kratz v. Kratz,*[6] which held that a 42 O.S.2001 § 43 hospital lien does not attach to UM indemnity, as well as two decisions of our intermediate appellate courts holding that an employer's or workers compensation carrier's statutory right to subrogation does not extend to UM benefits.[7]

¶ 9 Defendant further argues that to construe the words "an insurer" in § 46(B) to include insurers generally and not just the tortfeasor's insurer would lead to the absurd result that any insurance available to the patient would become fair game for a physician's lien, including such other first-party insurance as collision coverage. This would impair the contract of insurance between the insurer and its insured, which contemplates payment of benefits to the insured only.

¶ 10 Finally, defendant contends that the exemption from attachment and execution created by the provisions of 31 O.S.2001 § 1.A.21 for a person's interest in "a claim for personal bodily injury" in an amount not to exceed $50,000.00 places Johnson's UM benefits out of the reach of the Clinic's lien.

¶ 11 Plaintiff contends that the trial court erred in construing § 46(B) to exclude the patient's UM carrier. The terms of § 46(B), plaintiff urges, are clear and unambiguous and devoid of any language suggesting that the legislature intended to confine § 46(B) to the tortfeasor's insurer. In the absence of such limiting language or any other textual indication that the legislature intended to restrict § 46(B) in the way defendant advocates, plaintiff argues the statute must be construed as written—to apply to any insurer, including a patient's own UM carrier.

¶ 12 Plaintiff further argues that defendant's restrictive approach to the meaning of § 46(B) is inconsistent with the legislature's intent in enacting the statute. The purpose of the lien is to encourage physicians to provide medical treatment to injured persons without regard to their ability to pay at the time the services are rendered. Plaintiff argues that removing UM proceeds as a source of payment would thwart the statute's purpose.

¶ 13 Plaintiff also asserts that defendant's reliance on *Kratz* is misplaced. Plaintiff points out that statutory hospital liens are governed by the provisions of 42 O.S.2001 § 43, while the lien it asserts falls under the provisions of § 46(B). Plaintiff argues that critical differences between the language used in § 43 and § 46(B) preclude application of the reasoning in *Kratz* to a lien that comes within the terms of § 46(B).

4. *Booth v. McKnight,* 2003 OK 49, ¶ 12, 70 P.3d 855, 860.

5. *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("[i]ssues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings"); *Salve Regina College v.*

*Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

6. 1995 OK 63, 905 P.2d 753.

7. *Wise v. Wollery,* 1995 OK CIV APP 69, 904 P.2d 151, *cert. denied; Dennis v. Harding Glass Co.,* 1996 OK CIV APP 105, 929 P.2d 301, *cert. denied.*

## IV

## THE PROCEEDS OF UM COVERAGE ARE SUBJECT TO A § 46(B) PHYSICIAN'S LIEN

 ¶ 14 A statutory lien such as that accorded by § 46 to a physician stands in derogation of the common law.[8] As a remedial device that owes its existence to a legislative enactment, the text of the physician's lien statute is the measure of both the right and the remedy it creates.[9] A statutory lien must be strictly confined within the ambit of legislation giving it birth.[10] Hence, the funds upon which a physician's lien may be impressed are only those that come within the express terms of the statute. Once it becomes clearly established that the lien right attaches, the statute's enforcement provisions are to be accorded a liberal construction.[11]

 ¶ 15 In the absence of ambiguity or conflict with another enactment, our task is limited to applying a statute according to the plain meaning of the words chosen by the legislature, which presumptively express that body's intent.[12] The provisions of § 46(B) are neither ambiguous nor in conflict with another enactment. While we agree with defendant that § 46(B)'s express terms do not clearly define the outer boundaries of the physician's lien right,[13] the enactment's plain language leaves no doubt that the insurance coverage at issue in this case—the patient's

UM benefits—falls squarely within the statute's intended domain. The legislature enacted § 46 to encourage physicians to provide medical treatment to accident victims with insufficient funds or insurance to pay for their treatment at the time of delivery.[14] It is designed to ensure that physicians are paid for their services once their patients are compensated for their injuries.[15]

 ¶ 16 The purpose of UM coverage in a policy of automobile insurance is to protect the insured from the effects of personal injury resulting from an accident with another motorist who carries no insurance or is underinsured.[16] It is a carrier's direct promise to the insured to pay indemnity for a specified loss.[17] One of the effects of personal injury from an accident is the loss a patient may suffer as a result of the obligation to pay accident-related medical expenses. UM coverage is not supposed to be a windfall to the injured party. To place it off-limits to the § 46(B) lien would treat UM coverage as something other than the insured's receipt of indemnity for loss. It would thwart the legislature's intent to make insurance that compensates the patient for injury available to compensate the physician for services rendered. Had the legislature wanted to confine § 46(B) to the tortfeasor's insurer, it could easily have included the limitation in the text of the statute. It did not. Where a word or phrase is absent from a statute, we must presume that its absence is intention-

---

8. *Republic Bank & Trust Co. v. Bohmar Minerals, Inc.*, 1983 OK 29, ¶ 5, 661 P.2d 521, 523; *Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, 1980 OK 112, ¶ 5, 614 P.2d 576, 579.

9. *Riffe Petroleum, supra* note 8.

10. *Id.*

11. *Id.*

12. Only where the legislative intent cannot be ascertained from the language of the enactment's text—as in instances of ambiguity or conflict with other enactments—are rules of statutory construction to be utilized. *George E. Failing Co. v. Watkins*, 2000 OK 76, ¶ 7, 14 P.3d 52, 56; *Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P.2d 272, 276 (noting that "[u]nder our case law, we hesitate to construe any statute that appears clear and unambiguous").

13. Defendant contends that if we hold that § 46(B) applies to UM benefits, there will be no limit to the type of coverage that comes within the statute's operation, including coverages having nothing to do with the patient's personal injuries. Today's pronouncement authorizes the application of § 46(B) to UM coverage. It does not address the reach of § 46(B) beyond the facts presented in the case before us.

14. *Balfour v. Nelson*, 1994 OK 149, ¶ 11, 890 P.2d 916, 919.

15. *Id.*

16. *Uptegraft v. Home Ins. Co.*, 1983 OK 41, ¶ 6, 662 P.2d 681, 683–84.

17. *Id.* at ¶ 7, at 684.

al.[18]

¶ 17 Defendant's argument that § 46(A) restricts the application of § 46(B) to the tortfeasor's insurer has no textual support in the enactment. The plain language of § 46(B), which begins with the words, "In addition to the lien provided in [§ 46(A)]" and proceeds to use the unqualified phrase "claim against an insurer" indicates that the two provisions operate independently.

■■■ ¶ 18 The dissenter finds ambiguity in § 46(B) and would employ the canons of statutory construction known as *noscitur a sociis* and *ejusdem generis* to restrict its reach to the tortfeasor's insurer. Neither doctrine is applicable. *Noscitur a sociis* asserts that the meaning of an unclear or ambiguous word or phrase "should be determined by the words immediately surrounding it."[19] Even if there were some degree of ambiguity in the meaning of the words "an insurer," which we deny, *noscitur a sociis* does not provide a way to resolve the question. While § 46(A) and § 46(B) are neighbors, their respective language, *set apart in independent subsections*, does not derive any meaning from that association. The language of the former does not form the context of the latter. There is simply no indication in the statutory language of either subsection that the words used to create one lien are intended to have a limiting effect on the other.

■■■ ¶ 19 *Ejusdem generis* is equally inapplicable. We have held that the doctrine of *ejusdem generis* applies when (1) a statute contains a specific enumeration; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration is made, usually following the enumeration; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.[20] In other words, the statute must display a syntactical relationship of the specific to the general, with a series of specific words defining a class followed (or sometimes preceded) by a catchall referent that determines "how extensively the act ... [is] intended or should reasonably be understood to apply."[21]

¶ 20 The dissenter would have us treat the words in § 46(A) referring to the tortfeasor as creating a class into which § 46(B)'s words "an insurer" fall. Applying *ejusdem generis*, the dissenter would then define the words "an insurer" by reference to the "class of tortfeasor" resulting in the words "an insurer" becoming "the tortfeasor's insurer." We liken this to an attempt to fit a square peg into a round hole. The statute at issue does not lend itself to construction through *ejusdem generis* because it lacks most if not all of the characteristics necessary for the application of the doctrine. There is in § 46 no enumeration or list of specific things, no class created by such an enumeration, and no general catchall reference. There is simply

---

**18.** *TXO Production Corp. v. Okla. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969 (recognizing the presumption "that the legislature has expressed its intent in a statute and that it intended what it so expressed").

**19.** BLACK'S LAW DICTIONARY 1087 (8th ed.2004); *U.S. v. One TRW,* Model M14, 7.62 Caliber Rifle, 441 F.3d 416, 422 (6th Cir.2006). *See also* RONALD BENTON BROWN AND SHARON JACOBS BROWN, STATUTORY INTERPRETATION: THE SEARCH FOR LEGISLATIVE INTENT (2002) 77 ("*Noscitur a sociis* means that a word is known by its associates or by what surrounds it (or by the company it keeps)....For example, if the word "complaint" appeared in a statute concerning civil litigation, it was probably intended to have the meaning to which lawyers involved in civil litigation could relate (i.e., a formal document commencing a legal action), rather than as an expression of discontent—what it means to most non-lawyers.").

**20.** *White v. Wint,* 1981 OK 154, ¶ 9, 638 P.2d 1109, 1113–14.

**21.** 2A SUTHERLAND, STATUTORY CONSTRUCTION (6th ed.) § 47:18. *See also* BROWN AND BROWN, *supra* note 19 at 74 ("*Ejusdem generis* meaning 'of the same class,' is a canon invoked when a listing of items (i.e., 'limes, grapefruits, oranges ...') is ended or completed by the use of a general term ('... and others'). This canon provides that the general term at the end ('... and others') is to be limited to the class of specific items preceding it ('limes, grapefruits, and oranges'). It might be explained by reasoning that the drafter working down the list would keep this in mind when writing the general term at the end. It can be deduced that the ending term was probably intended to be limited to the terms in the list by the legislature.").

nothing in the statute upon which the doctrine of *ejusdem generis* can operate.[22]

¶ 21 In evaluating whether the legislature intended for § 46(A) to restrict the meaning of § 46(B), it is important to recall that an injured party cannot "assert or maintain a claim against" the tortfeasor's liability insurer.[23] The dissenter's application of the *noscitur a sociis* and *ejusdem generis maxims* to restrict § 46(B) to the tortfeasor's insurer would have the absurd result of the legislature having enacted a lien that can never actually exist.

¶ 22 Defendant urges us to extend to this case our holding in *Kratz* (that a statutory hospital lien does not attach to UM benefits). Because the relevant statutes are dissimilar, we decline to do so. Hospital liens are governed by the terms of 42 O.S.2001 § 43, which expressly limit the scope of a hospital lien to proceeds that result from a "claim against another for damages."[24] Because UM benefits do not result from a claim against another for damages, we held in *Kratz* that they do not fall within the ambit of the hospital lien statute. While that reasoning may be relevant to a lien arising under the provisions of § 46(A), which is virtually identical to § 43, it has no relevance to a § 46(B) lien, which grants a lien right to a physician against proceeds derived from a patient's "claim against an insurer."[25] With all due respect to the dissenter's contention that § 43 and § 46 are "virtually identical," we note the following not insignificant difference: § 43 does not contain any language, let alone a separate subsection, that authorizes a lien against the proceeds of money recovered by an injured person from an insurer against whom the injured party has asserted or maintained a claim.

¶ 23 Defendant's remaining contention is that the exemption from attachment and execution provided by 31 O.S.2001 § 1.A.21 for personal injury recoveries up to $50,000.00 negates the Clinic's lien against the proceeds of Johnson's UM recovery. We disagree. It is not unprecedented for us to hold that a lien is enforceable against exempt property. We have held that a statutory exemption from attachment or execution does not apply to certain consensual liens such as mortgages and security interests.[26] We have also enforced a laborer's lien created under the provisions of 42 O.S.1951 § 141 against homestead property.[27]

¶ 24 Because we are dealing here with a statutory lien's relationship to a statutory exemption, our task is to ascertain how the legislature intended for the two statutes to operate together. We start with the presumption that the legislature would not enact legislation that is incapable of functioning usefully. We hence decline to construe the exemption statute as defendant advocates because that construction effectively renders the lien statute a nullity. Instead, we construe the lien and exemption statutes to give effect to both. We therefore hold that the 31 O.S.2001 § 1.A.21 exemption notwithstanding, a statutory physician's lien is enforceable against personal injury proceeds of less than $50,000.00; the statutory exemption remains

22. 2A SUTHERLAND *supra* note 21 at § 47.20 ("Where a general term appears with no enumeration, with other general terms, or with specific terms not suggesting a class, the rule of ejusdem generis does not apply.").

23. *Daigle v. Hamilton*, 1989 OK 137, ¶ 18, 782 P.2d 1379, 1383.

24. The provisions of 42 O.S.2001 § 43 contain an express limitation with respect to accidents covered by the Workers Compensation Act. *In Thomas v. Okla. Orthopedic & Arthritis Foundation Inc.*, 1995 OK 47, 903 P.2d 279, the court held that a hospital is not entitled to a § 43 lien on the proceeds of an injured worker's settlement of a suit against the third-party tortfeasor where: 1) the worker has filed a claim in the Workers' Compensation Court and 2) the Workers Compensation Court has assumed jurisdiction and made an award for medical expenses against the employer before the worker settled with the third-party. Under these circumstances, the Workers Compensation Act provides the exclusive remedy in the Workers' Compensation Court for the hospital to recover for services rendered to the injured worker. *Id.* at ¶ 16, at 287.

25. *See Richard v. OU Physicians*, 2005 OK CIV APP 108, ¶ 6, 127 P.3d 618, 620, *cert. denied.*

26. *Keist v. Cross*, 1926 OK 354, ¶ 4, 247 P. 85, 86.

27. *Conrad v. Marlar*, 1961 OK 270, ¶ 18, 366 P.2d 463, 465.

as a bar to attachment or execution by all other creditors.[28]

¶ 25 The dissent would have us *sua sponte* assert that the small claims division lacks subject matter jurisdiction over this proceeding to enforce a lien and would have us declare the trial court's judgment a nullity. While an appellate court is duty-bound to inquire *sua sponte* into its own jurisdiction over any pending matter as well as that of the lower court whence the case came by appeal or on certiorari,[29] the enforcement of a lien in small claims presents a matter of internal allocation of caseload rather than one of jurisdiction. Under the State's constitution,[30] the district court—in all of its divisions—constitutes an omni-competent, single-level, first-instance tribunal[31] with "unlimited original jurisdiction over all justiciable matters...."[32] While the business of the district court is divided into separate dockets or compartments,[33] its constitutionally-conferred jurisdictional sweep is indivisible.[34] The correct method for challenging the power of the small claims division to enforce a lien is by motion to transfer the cause to the proper division of the district court, not by dismissal for lack of subject matter jurisdiction.[35] All judges of the district court have a constitutionally invested power to transfer cases to another division of the district court on any tenable legal or equitable ground shown at any point in litigation.

¶ 26 The dissent also contends that the physician's lien at issue here is invalid and hence unenforceable because it was not perfected as required by § 46(C)(1) and (2). Compliance with the statutory requirements for perfection of the lien at issue was not raised in the trial court and was not the basis for the trial court's decision. It is not the function of this court to make first-instance determinations of fact or legal questions which have been neither raised nor assessed at *nisi prius*.[36] The matter of the lien's perfection is not before us today. Unlike the dissent, we consider it highly improper to express any opinion on a question which is not before us for consideration.

¶ 27 The facts pertinent to this appeal are not in dispute. The Clinic provided medical treatment to Johnson after she was injured

**28.** *Accord, In re Innis*, 181 B.R. 548, 551 (Bkrtcy. N.D.Okla.1995).

**29.** *Stites v. DUIT Const. Co., Inc.*, 1995 OK 69, ¶ 8, n. 10, 903 P.2d 293, 297, n. 10; *Lincoln Bank and Trust Co. v. Okla. Tax Comm'n*, 1992 OK 22, ¶ 6, 827 P.2d 1314, 1318; *Cate v. Archon Oil Co., Inc.*, 1985 OK 15, ¶ 10, n. 12, 695 P.2d 1352, 1356, n. 12; *Pointer v. Hill*, 1975 OK 73, ¶ 14, 536 P.2d 358, 361.

**30.** The pertinent terms of Art. 7 § 7(a), OKLA. CONST., are:
"* * * The District Court shall have unlimited original jurisdiction* of all justiciable matters, except as otherwise provided in this Article, ..." (emphasis added)
Since 1969 district courts exercise unlimited original jurisdiction of all justiciable matters, except as otherwise provided by the Constitution. Art. 7 § 7, OKLA. CONST. (eff. 13 Jan. 1969); *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 1974 OK 19, ¶ 21, 519 P.2d 491, 495.

**31.** *Eskridge v. Ladd*, 1991 OK 3, ¶ 25, n. 7, 811 P.2d 587, 592–3, n. 7 (Opala, C.J., concurring); *Matter of B.C.*, 1988 OK 4, ¶ 3, 749 P.2d 542, 548 (Opala, J., concurring in part and dissenting in part); *Lee v. Hester*, 1982 OK 30, ¶ 6, 642 P.2d 243, 246; *Interstate Brands Corp. v. Stephens*,

1980 OK 121, ¶ 2, 615 P.2d 297, 299 (Opala, J., concurring).

**32.** Art. 7 § 7(a), OKL. CONST., *supra* note 30.

**33.** The division of the district court's business into separate dockets is authorized by the provisions of 20 O.S.2001 § 91.2, which stand vitalized by this court's administrative directives (SCAD No. 99–87 (16 December 1999), 92–06 (24 December 1992), 89–7 (12 September 1989), 89–1 (31 January 1989), 68–1 (23 December 1968)).

**34.** *Lee v. Hester*, *supra* note 31 at ¶ 6, at 246 (stating that "[t]he current sweep of district court's power no longer can be said to hinge on the presence of some specifically tailored legislative grant").

**35.** *Eskridge v. Ladd*, *supra* note 31 at ¶ 22, at 591–92 (Opala, C.J., concurring).

**36.** *Evers v. FSF Overlake Associates*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587; *Salazar v. City of Okla. City*, 1999 OK 20, ¶ 15, 976 P.2d 1056, 1062; *Bivins v. State ex rel. Okla. Memorial Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464; *Dyke v. St. Francis Hosp., Inc.*, 1993 OK 114, ¶ 11, 861 P.2d

in an automobile accident. Johnson asserted a claim against her UM carrier, Liberty Mutual, in connection with the accident. The Clinic filed a § 46 physician's lien against any proceeds payable to Johnson by "an insurer." Because we hold today that UM indemnity stands subject to a § 46(B) physician's lien, we reverse the trial court's judgment that placed Johnson's UM benefits beyond reach of the Clinic's lien and remand the cause with directions to proceed in a manner consistent with today's pronouncement.[37]

## V

## SUMMARY

¶ 28 The provisions of § 46(B) clearly and unambiguously authorize a physician to place a lien on proceeds to which a patient is entitled from a claim against an insurer. We have noted that "seeking hidden meaning at variance with the language used [in a statute] is a perilous undertaking which is quite as apt to lead to an amendment of a law by judicial construction as it is to arrive at the actual thought in the legislative mind."[38] Where statutory language is plain and the legislative purpose evident, we will not interject into the statute a word or phrase that alters the choice the legislature has made. Such is the case here where the statute plainly authorizes a lien against proceeds derived from a claim against an insurer. The trial court erred in deciding otherwise.

¶ 29 **THE TRIAL COURT'S JUDGMENT IS REVERSED AND THE CAUSE IS REMANDED WITH DIRECTIONS TO PROCEED IN A MANNER CONSISTENT WITH TODAY'S PRONOUNCEMENT.**

¶ 30 WINCHESTER, V.C.J., and LAVENDER, HARGRAVE, OPALA, and TAYLOR, JJ., concur.

¶ 31 KAUGER, J., concurs in part and dissents in part.

¶ 32 WATT, C.J., and EDMONDSON and COLBERT, JJ., dissent.

EDMONDSON, J., Dissenting and joined by WATT, C.J. and COLBERT, J.

¶ 1 I disagree with the majority's conclusion that our statutory physician's lien is enforceable against UM coverage and would dissent solely for that reason, but this case has more basic and fundamental flaws which also must be addressed: the small claims court did not have subject matter jurisdiction to hear and determine this action to enforce a lien, and the purported lien was not perfected according to statute.

¶ 2 The question of subject matter jurisdiction is primary and fundamental in every case and it is the duty of this Court to inquire into its own jurisdiction and that of the trial court whether or not such question is raised by the parties. *Collins v. Mid-Continent Pipeline Co.*, 1999 OK 56, 6 P.3d 1050, 1051, fn. 2; *Dickson v. Dickson*, 1981 OK 142, 637 P.2d 110, 112, fn. 2; *Hayhurst v. Hayhurst*, 1966 OK 238, 421 P.2d 257, 260. Subject matter jurisdiction cannot be conferred by consent or waiver of the parties, and it may be raised at any time. *Shaffer v. Jeffery*, 1996 OK 47, 915 P.2d 910, 913. Jurisdiction is the authority by which courts and judicial officers take cognizance of and decide cases. *Turk v. Coryell*, 1966 OK 194, 419 P.2d 555, 558. It is the power of judicial officers and courts to hear and determine the subject in controversy and to exercise judicial power over every aspect of the cause and the power to render the particular judgment entered. *Lowry v. Semke*, 1977 OK 220, 571 P.2d 858, 861; *In re Harkness' Estate*, 1921 OK 329, 204 P. 911, 917.

¶ 3 The small claims division of the district court is created by the Small Claims Procedure Act, 12 O.S. Supp.2003, §§ 1751–1753, which limits its jurisdictional power. Maxi-

295, 300; *Davis v. Gwaltney*, 1955 OK 362, ¶ 13, 291 P.2d 820, 824.

**37.** To the extent the Court of Civil Appeals' decision in *Fugate v. Mooney*, 1998 OK CIV APP 48, 958 P.2d 818, could be construed to preclude

enforcement of a physician's lien against the proceeds of UM coverage, it is expressly overruled.

**38.** *Seventeen Hundred Peoria, Inc. v. City of Tulsa*, 1966 OK 155, ¶ 14, 422 P.2d 840, 843–44.

mum values and amounts were increased to $6,000.00 effective November 1, 2004; that aside, the Act provided as follows at the times pertinent to this case:

A. The following suits may be brought under the small claims procedure:

1. Actions for the recovery of money based on contract or tort, including subrogation claims, but excluding libel or slander, in which the amount sought to be recovered, exclusive of attorneys fees and other court costs, does not exceed Four Thousand Five Hundred Dollars ($4,500.00);

2. Actions to replevy personal property the value of which does not exceed Four Thousand Five Hundred Dollars ($4,500.00). If the claims for possession of personal property and to recover money are pled in the alternative, the joinder of claims is permissible if neither the value of the property nor the total amount of money sought to be recovered, exclusive of attorneys fees and other costs, does exceed Four Thousand Five Hundred Dollars ($4,500.00); and

3. Actions in the nature of interpleader, as provided for in Section 2022 of this title, in which the value of the money which is the subject of such action does not exceed Four Thousand Five Hundred Dollars ($4,500.00); and

B. No action may be brought under the small claims procedure by any collection agency, collection agent, or assignee of a claim, except that an action may be brought against an insurer or third-party administrator by a health care provider as that term is defined in Section 6552 of Title 36 of the Oklahoma Statutes, who is an assignee of benefits available under an accident and health insurance policy, trust, plan, or contract.

C. In those cases which are uncontested, the amount of attorneys fees allowed shall not exceed ten percent (10%) of the judgment.

D. No action may be brought under the small claims procedure for any alleged claim against any city, county, or state agency, or employee of a city county or state agency, if the claim alleges matters arising from incarceration, probation, parole or community supervision.

E. No action by a plaintiff who is currently incarcerated in any jail or person in the state may be brought against any person or entity under the small claims procedure.

¶ 4 Broadway Clinic brought this suit to enforce its claimed statutory physician's lien.[1] It is not an action based on contract, tort, replevin or assignment of benefits, and it is therefore not authorized by § 1751 as a matter which may be heard and decided in small claims court.[2] A case that is brought in a court which has no jurisdiction to settle the controversy is said to be "coram non judice" and such a decision is legally invalid. *Collins v. Mid–Continent Pipeline Co.*, 6 P.3d at 1053, fn. 8. That being the situation here, I would hold the trial court's purported judgment a nullity.

¶ 5 Since the majority of this Court does not agree that this action to enforce a lien

1. The physician's lien statute, 42 O.S.2001, 46 provides: "D. The liens provided for in this section may be enforced by civil action in the district court of the county where the lien was filed. Such an action shall be brought within one (1) year after the physician becomes aware of final judgment, settlement or compromise of the claim asserted or maintained by or on behalf of the injured person. The practice, pleading, and proceedings in the action shall conform to the rules prescribed by the Oklahoma Pleading Code [12 O.S.2001 §§ 2001, et seq.] to the extent applicable."

2. For decisions recognizing subject matter jurisdiction limitations of the small claims court docket based on § 1751 restrictions, see *Patterson v. Beall*, 2000 OK 92, 19 P.3d 839(small claims court limited by statute as to types of cases and cap on damages); *Thayer v. Phillips Petroleum Co.*, 1980 OK 95, 613 P.2d 1041 (cap on claim is jurisdictional limit); *Carter v. Gullett*, 1979 OK 146, 602 P.2d 640(jurisdiction in small claims dependent on amount of claim and counterclaim); *Seminole Family Medicine Clinic v. Southern*, 2005 OK CIV APP 46, 116 P.3d 191(collection agency not proper party in small claims action); *Fowler Equipment Co. v. Houston Oil Co., Inc.* 1997 OK CIV APP 52, 945 P.2d 513 (small claims court is without power to exceed cap on recoverable damages); *Phillips v. Seffel*, 1998 OK CIV APP 6, 954 P.2d 1257 (jurisdiction of small claims dependent on kind of case and amount sought)

exceeded the subject matter jurisdiction limitations of the small claims court, I must additionally dissent from its construction and application of 42 OS 2001 § 46.

¶ 6 Contrary to the majority's position, § 46(B) is uncertain and ambiguous regarding who is meant to be included as "an insurer." To reach its result, the majority reads the phrase in the abstract. It is not a phrase which stands alone without qualifications on its meaning, however. It is a part of the entire statute, and a statute must be construed as a whole in light of its general purpose and objective. The words, phrases and sentences of a statute are to be understood as they are used, not in an abstract sense, and words which are used in one part of a statute must be interpreted in light of their context and understood in that sense which best harmonizes with the other parts of the statute. *Matter of Estate of Little Bear*, 1995 OK 134, 909 P.2d 42, 50. The majority's recognition that the statute does not define the outer boundaries of the lien only highlights the statute's ambiguity. Thus, the reach of the lien into the property rights of injured patients is to be determined by the judiciary instead of the legislature.

¶ 7 Subsections A and B do not operate independently of each other. Subsection A creates a physician's lien for medical services and limits its applicability to specific funds obtained in a specific way by a specific population of patients: the sums an injured patient recovers from his claim against a "person," the tortfeasor or other third party at fault for his injury. Subsection B's creation of a lien "[i]n addition to the lien" in subsection A, is limited by the particular terms of subsection A to mean the sums that the injured patient recovers from the insurer of the tortfeasor or other third party at fault for his injury.

¶ 8 It is axiomatic that the cardinal rule of statutory interpretation is to ascertain and, if possible, to give effect to the Legislature's intention and purpose as it is expressed in the statute's provisions. When the language of a statute is not plain or unambiguous, it is the court's job to determine the meaning of the statute in a way that produces a reasonable result which will promote the general purpose for which the statute was enacted. *See AMF Tubescope Company v. Hatchel,* 1976 OK 14, 547 P.2d 374, 379–80.

¶ 9 Appellee correctly argues that the doctrine of statutory interpretation, ejusdem generis, applies here and precludes the majority's finding that the statutory lien may be enforced against uninsured motorist benefits paid to the insured patient by his own insurer. Under that rule, where general words follow particular words, the general words do not explain or amplify particular words preceding them, but are themselves restricted and explained by the particular terms. *Oklahoma Tax Commission v. Fortinberry Co.,* 1949 OK 75, 207 P.2d 301, 305. *Nucholls v. Board of Adjustment of the City of Tulsa,* 1977 OK 3, 560 P.2d 556, 558–559. Where general words follow particular words the general words will be considered as applicable only to things of the same general character, kind, nature or class enumerated, and cannot include wholly different things *Nucholls v. Board of Adjustment of the City of Tulsa, supra; White v. Wint,* 1981 OK 154, 638 P.2d 1109, 1114. This maxim is an application of the broader maxim, noscitur a sociis, which means that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general. *Application of Central Airlines, Inc.,* 1947 OK 312, 185 P.2d 919, 923–924. In *Central Airlines* we observed that the rule is based on the obvious reason that "if lawmakers had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes." *Id.* at 924.

¶ 10 Application of these doctrines of statutory construction requires a finding that the meaning of "an insurer" in subsection B is restricted to the insurer of the tortfeasor or the party who caused the injury, and an injured party's own insurer is not intended to be included. There is no clearly manifested legislative intent that the language should be given a broader meaning.

¶ 11 In *Kratz v. Kratz,* 1995 OK 63, 905 P.2d 753, we found 42 O.S.1999, § 43, the statutory hospital lien, was ambiguous and we determined that it did not apply to uninsured motorist benefits paid by the patient's

own insurer. We recognized that uninsured motorist insurance is "first-party" coverage, like collision, comprehensive or medical payments, not "third-party" coverage, like public liability insurance, as it is a carrier's direct promise to its insured to pay insured for the loss, rather than a promise to insured to pay a third party. UM coverage is a benefit of insured's private contractual arrangement with his or her carrier based on the terms of the policy. *Uptegraft v. Home Ins. Co.* 1983 OK 41, 662 P.2d 681. Uninsured motorist insurance is not a "windfall." It is intended to compensate an insured for his loss, while public liability coverage furnishes him protection from creditors, not compensation for his loss. *See Uptegraft v. Home Ins. Co.*, 662 P.2d at 684.

¶ 12 While it is true that § 46, the physician's lien statute before us today, is not an exact copy of § 43, the hospital lien statute, the two are virtually identical in all relevant respects. The majority's view that § 46 is so dissimilar as to require a different result from the holding in *Kratz* is unconvincing. Both are intended to assure payment for medical treatment provided for injured patients who might otherwise be non-paying. Both clearly create a lien on the money the injured patient recovers from the person who caused the injury and money recovered from a tortfeasor's insurer. Both are unclear about the lien's application to the injured patient's own insurance. The notice, perfection and enforcement procedures for both liens are quite similar. Significantly, both liens also provide for the superiority of the patient's attorney's lien. See § 46(C) and § 43. We noted in *Kratz* that this established superiority results from the Legislature's recognition that without the attorney's representation of the injured person against the tortfeasor and the tortfeasor's insurer, there would be no money to impress a lien upon. Considering this factor in our construction of the statute to exclude UM coverage in *Kratz*, we stated: "The court noted in *Vinzant v. Hillcrest Med. Center*[, 609 P.2d 1274 (Okl.1980) ] . . . that superiority was legislative recognition that it is the skill and effort of the lawyer in a personal injury case which results in there being a recovery for the patient and the hospital, and rests on the fact that for lawyers a contingent fee is the 'customary arrangement in negligence cases.' " *Kratz*, 905 P.2d at 756–757.

¶ 13 Given the consistency of the two statutory liens, it seems very unlikely that the legislature intended hospital liens to apply only to third-party coverage but intended physician's liens to apply to first-party coverage as well as third-party coverage.

¶ 14 In *Kratz*, we recognized that there is no basis for a hospital lien in the absence of statute, and that while the hospital lien serves a worthy public purpose, we are not free to read in the inclusion of funds which are not fairly embraced by the terms of the statute:

This Court must strictly construe statutes creating liens. Liens are property rights and it is not the function of the courts to create them from a sense of justice in a particular case. *Young v. J.A. Young Mach. & Supply Co.*, 203 Okla. 595, 224 P.2d 971 (1950). Liens can be created either by contract or by law. 42 O.S.1991 § 6. A statutory lien such as the hospital lien at issue stands in derogation of the common law and must be strictly construed. A lien that is not provided by the clear language of the statute cannot be created by judicial fiat, for the words of the statute are the measure of the right and the remedy. A court cannot create a lien out of a sense of fairness if the terms of the statute are found too narrow and have not been met. *Riffe Petroleum C. v. Great Nat. Corp., Inc.*, 614 P.2d 576 (Okl. 1980); *Harriss v. Parks*, 77 Okl. 197, 187 P. 470 (1920); *Interurban Construction Co. v. Central State Bank of Kiefer*, 76 Okl. 281, 184 P. 905 (1919). *Kratz*, 905 P.2d at 756.

¶ 15 Appellee correctly contends that if the physician's lien statute can be enforced against UM benefits, all first-party coverages will now be included within its reach, including those which are unrelated to the patient's injuries and were not intended for that purpose. In my opinion, "an insurer" in the language of a statute means the insurer of the tortfeasor or other party at fault. The majority, by judicial fiat, creates a physi-

cian's lien on first-party coverage and, in doing so, also removes the protection afforded UM and other first-party coverage provided by the Legislature's exemption from attachment, execution or other forced sale, of a "person's interest in a claim for personal bodily injury, death or worker's compensation claim, for a net amount not in excess of Fifty Thousand Dollars($50,000.00), but not including any claim for exemplary or punitive damages." 31 O.S.2001, § 1(21).

¶ 16 As a final and additional point, I submit the physician's lien at issue here is invalid because it was not perfected as required by statute. It does not contain an itemized statement of the amount claimed, but only asserts the total amount claimed. Title 42 O.S., Section 46, (C)(1) and (2), set forth the requirements for perfection of a physician's lien, and provide it must be in writing and contain:(1) an itemized statement of the amount claimed; (2) an identification of the insurance policy against which the lien is asserted; (3) the name and address of the physician; (4) the name and address of the injured person; and (5) the name of the person, firm, or corporation against whom the claim is made. The notice must be filed on the mechanic's and materialman's lien docket in the county of the physician's office and a copy of the lien as filed must be sent by registered or certified mail to the injured party and his attorney, if known, and the person, firm or corporation allegedly liable. Similar requirements are provided for the creation of a hospital lien by 42 O.S. § 46(C)(1).

¶ 17 As previously discussed, our decisions strictly construe statutory liens and have consistently held that in order for a statutory lien to be valid and enforceable, the exact terms of the statute creating it must be complied with. Courts cannot ignore the terms prescribed by a statute for creating a lien. *Balfour v. Nelson*, 1994 OK 149, 890 P.2d 916, 919. This principle of strict statutory construction was adopted in *Malloy v. St John Medical Center*, 234 B.R. 519 (N.D.Okla.1999), holding that where creditors' hospital and physician liens did not contain itemized statements of the amounts claimed, the liens were unenforceable be-

cause they failed to comply with Oklahoma's statutory requirements for perfection. Addressing creditors' arguments that the defects in their liens should be overlooked because the purpose of the lien is to assure payment to medical providers, that Court, relying on *Kratz*, explained that the judiciary has no power to repeal statutory requirements which have not been met in order to reach some specific result for the parties.

## CONCLUSION

¶ 18 Because (1)small claims courts do not have jurisdiction of physician's lien enforcement actions, (2) physicians do not have a statutory lien against their patients' UM coverage, and (3) Broadway Clinic's purported lien failed to comply with the requirements necessary for perfection and was therefore unenforceable, I respectfully dissent.