DALLAS v. GEICO INSURANCE CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:DALLAS v. GEICO INSURANCE CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 DALLAS v. GEICO INSURANCE CO.
2019 OK CIV APP 41
Case Number: 116209
Decided: 06/24/2019
Mandate Issued: 07/24/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 41, __ P.3d __

 

OLIVER DALE DALLAS, Plaintiff/Appellee,
v.
GEICO INSURANCE COMPANY, Defendant/Appellee,
and
THE PAIN MANAGEMENT SOLUTION, PLLC, Claimant/Appellant,
and
STOVER PHYSICAL THERAPY, PC; OCOMS IMAGING, LLC and OLIVER A. CVITANIC, M.D., P.C., Claimants.

APPEAL FROM THE DISTRICT COURT OF

OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD C. OGDEN, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS

Chris Sloan, SLOAN LAW OFFICE, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee

R. Robyn Assaf, Alia Al-Assaf, Oklahoma City, Oklahoma, for Claimant/Appellant

Gerald F. Pignato, Benjamin M. McCaslin, PIGNATO, COOPER, KOLKER & ROBERSON, P.C., Oklahoma City, Oklahoma, for GEICO

KEITH RAPP, JUDGE:

¶1 The defendant, The Pain Management Solution, PLLC (Pain Management), appeals a judgment adjudicating claims in an action brought by the plaintiff Oliver Dale Dallas (Dallas). The remaining defendants, except Geico Insurance Company (Geico), either did not object to the judgment or did not appear.[1] Geico provided the money which is the subject of this action.[2]

BACKGROUND

¶2 Dallas alleged that he sustained injury as a passenger when his wife, the driver, applied the brakes to avoid a collision. The other vehicle left the scene and that driver has not been identified. Dallas received medical treatments from all of the medical provider defendants.

¶3 Dallas retained his attorney. The attorney pursued an uninsured motorist (UM) claim against Dallas's insurer, Geico. After negotiations, and without a lawsuit, the UM claim was settled for the sum of $60,614.78. This sum was insufficient to pay the attorney fee and the medical providers' charges.

¶4 Dallas's attorney filed this action to adjudicate medical liens and claims and to apportion the fund. The petition set out the source of the funds and the statement that counsel and Dallas had a fifty percent contingency fee contract. Counsel endorsed "Attorney's Lien Claimed" on the petition.[3] The petition listed the medical providers and their claims and liens.

¶5 The trial court conducted a hearing. During the hearing, the trial court inquired of Dallas's attorney if he had a fifty percent, written fee contract, and counsel affirmed that he did have the contract. The trial court clearly accepted the statement without having the contract admitted into evidence. Counsel also explained that the reason for the amount of the contingency was due to the complex case circumstances of no collision, no other driver, and a criminal matter against Mrs. Dallas, which is apparently related to the traffic incident.[4]

¶6 During the course of the hearing, counsel for Pain Management offered into evidence a letter purporting to be a $52,000.00 settlement offer from Geico. Dallas's attorney objected, and the trial court sustained the objection.

¶7 Dallas's attorney presented a proposed division of proceeds. The proposal awarded counsel the full attorney fee and costs and divided, proportionately, the balance among the participating medical claimants. Only Pain Management objected, and it now appeals. As briefed, Pain Management asserts error regarding evidentiary issues and error regarding whether Dallas's counsel has a lien and any legal right to priority.

STANDARD OF REVIEW

¶8 The principle issues in this case do not involve factual questions, but rather interpretations of statutes, rules and prior case law. Thus, the appeal presents questions of law which are reviewed de novo. Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. "Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." Id.

¶9 "[A] judgment will not be reversed based on a trial judge's ruling to admit or exclude evidence absent a clear abuse of discretion." Myers v. Missouri Pacific R.R., 2002 OK 60, ¶ 36, 52 P.3d 1014, 1032-33. "An abuse of discretion takes place when the decision is based on an erroneous interpretation of the law, on factual findings that are unsupported by proof, or represents an unreasonable judgment in weighing relevant factors." Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Bd., 2007 OK 21, ¶ 5, 158 P.3d 461, 463-64.

ANALYSIS AND REVIEW

A. Procedural Issues

¶10 The complaint about not requiring the written attorney contingent fee contract does not show error. The trial court specifically inquired and was told by the attorney that there is a contract. The trial court was satisfied as to its existence, and the critical point was the amount of the contingency. Pain Management has not demonstrated any abuse of discretion or absence of critical information for the trial court. Moreover, the Pain Management argument here is addressed more to the propriety of a fifty percent contingency than the existence of the fee contract.

¶11 Pain Management argues that its representative should have been allowed to testify that its bill was for the subject of the accident injuries. Dallas's attorney had mentioned that Pain Management had treated Dallas for unrelated matters. However, counsel further stated that the bills submitted in this case were for the auto injuries. Moreover, the adjudication proposed by Dallas's attorney included all of the charges from Pain Management, without challenge or deduction. No error has been demonstrated.

¶12 Pain Management claims that there was a $52,000.00 settlement offer from Geico and that it would be unethical for Dallas's attorney to claim a contingency on that part of the settlement. The trial court declined to admit the letter into evidence on the ground of hearsay and relevance.

¶13 A review of the letter, Exhibit 1, shows that it is not literally as represented by Pain Management in its argument. The letter appears to be handwritten from Dallas to the physician and asks him to accept a $52,000.00 settlement. Pain Management claims $64,795.62. The source basis of the $52,000.00 is not mentioned in the letter. No effort appears to have been made to call Dallas to identify and authenticate the document. Thus, interpreting the letter to mean that Geico offered to settle is an interpretation which cannot be made under the Record. No error has been demonstrated.[5]

B. Legal Issues

¶14 There are two questions.

¶15 First, does Dallas's attorney have a lien?[6] This question arises because Dallas did not file a UM lawsuit or tort action. Thus, there is no "lien claimed" endorsement or notice of lien based upon a prior UM or tort lawsuit.

¶16 Second, Dallas's attorney did endorse the interpleader action petition with "lien claimed." Does this endorsement establish a priority, or has counsel merely perfected a current lien on the settlement proceeds which is of equal priority with the established medical provider liens?

¶17 In what might be considered a typical case, an injured party files an action against the tortfeasor and recovers a judgment or settlement. The injured party's attorney perfects an attorney's lien by giving notice or endorsing the pleading "Lien Claimed." 5 O.S. Supp. 2018, § 6(A).[7] The medical providers perfect liens. 42 O.S. Supp. 2017, § 46(A). Here, there are physicians' liens which were filed between 2012 and 2017. 42 O.S. Supp. 2017, § 46[8] (amended by 2018 Okla. Sess. Laws, ch. 195, § 2.)[9]

¶18 Thus, under the hypothetical case, the physician perfects a lien against recovery pursuant to Subsection A when the injured party "maintains a claim" against the tortfeasor. This lien is junior to the perfected attorney's lien according to Subsection A.[10]

¶19 However, the Subsection A scenario is not what transpired here. This case comes under Subsection B. Subsection B gives the physicians a lien against the Geico settlement proceeds because Dallas asserted and maintained a claim against Geico. It is noted that Subsection B does not provide for the superiority of the attorney's lien as does Subsection A. The reason for this difference is not apparent. However, there is here no prior legal action against the tortfeasor for Dallas's attorney to give notice or to endorse "lien claimed."

¶20 The facts are clear that there was no attorney's lien at the point in time when Dallas first asserted and maintained the UM claim against the insurer, Geico. Moreover, according to the Record, Dallas's attorney did not follow the Section 6 alternative to the "lien claimed" endorsement by sending a notice to the physicians.

¶21 Therefore, the answer to the first question is: Prior to the filing of the interpleader, Dallas's attorney did not have an attorney's lien. Dallas's attorney has an attorney's lien only after filing the interpleader. That lien attached to the interpleader cause of action. 5 O.S. 2011, § 6(A). "The attorney's lien attaches to the client's cause of action, and any recovery thereon, albeit the recovery is effected in an action other than the action in which the services were rendered." Edwards v. Andrews, Davis, Legg, Bixter, Millsten & Murrah, 1982 OK 72, ¶ 18, 650 P.2d 857, 862.

¶22 Dallas relies upon Edwards to argue that the interpleader is a logical extension of the UM claim and settlement. There are significant differences between the facts in Edwards and the facts here. In Edwards, the attorney's lien had been established in the original litigation. The parties settled the litigation. The matter on appeal in Edwards resulted from an action to enforce the settlement. The Supreme Court ruled that this enforcement action was a continuation of the original action for purposes of the attorney's lien. Here, there is no prior action where an attorney's lien was perfected.

¶23 In addition, Dallas's interpleader is not a continuation of the UM claim or enforcement of the settlement of the UM claim. The UM claim against Geico is a contract claim, not a tort claim. Uptegraft v. Home Ins. Co., 1983 OK 41, 662 P.2d 681.

An action is one ex contractu when it is derived from (a) an express promise, (b) a promise implied in fact or (c) a promise implied in law. The uninsured motorist coverage constitutes a carrier's direct promise to the insured to pay indemnity for a specified loss. Because it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is understood, in insurance parlance, as "first-party coverage"--much like collision, comprehensive, medical payments or personal injury protection--and not as "third-party coverage," such as personal injury or property damage coverage of public liability insurance. In short, we are dealing here with an agreement to indemnify the insured for injuries caused by another--who was uninsured or underinsured--based on a showing that the other motorist was guilty of negligence resulting in injury to the insured. A suit founded upon the insured's allegations (a) that he is entitled to payment under one of the first-party coverage clauses in the contract and (b) that the carrier has refused payment thereby breaching its promise, is clearly a contract action. The circumstances of the uninsured motorist's culpability and of the insured's damages are matters which the insured must prove in order to recover from the insurer, but these are really conditions of the insurer's promise. The recovery of the insured is based ultimately upon the policy without which no liability could be imposed upon the insurer for the tort of another.

Uptegraft, ¶ 7, at 684-85 (citations omitted).

¶24 The statute specifically provides for priority of the attorney's lien in tort actions. 42 O.S. Supp. 2018, § 46(A). The statute is silent about priority when the injured party's claim is against the insurer. 42 O.S. Supp. 2018, § 46(B). The claim made by Dallas is a contract claim against his insurer, Geico.

¶25 Statutes are construed to carry out legislative intent. Estes v. ConocoPhillips Co., 2008 OK 21, ¶ 16, 184 P.3d 518, 526. "We presume that the Legislature expressed its intent and intended what it expressed, and statutes are interpreted to attain that purpose and end, championing the broad public policy purposes underlying them." Id. Thus, the Legislature has clearly distinguished tort claims from contract claims for purposes of the priority of liens.

¶26 Last, examination of the underlying purposes for the attorney's lien and the physician's lien reveals no basis for preferring one or the other for priority purposes in the absence of statutory authority. Both liens serve the same purpose for the benefit of the covered profession. "The attorney's charging lien is based upon the equitable doctrine that an attorney should be paid out of the proceeds of the judgment secured by that attorney." Edwards, 1982 OK 72 ¶ 18, 650 P.2d at 862. The physician's lien is designed to ensure that physicians are paid for their services once their patients are compensated for their injuries. Broadway Clinic v. Liberty Mutual Ins. Co., 2006 OK 29, ¶ 15, 139 P.3d 873, 877 (citations omitted).

¶27 Pain Management has not demonstrated any legal reasons to deny payment from the settlement to Dallas's attorney. However, the trial court erred by ruling that the attorney's lien for the attorney fee had priority. It must be noted that some claimants did not appear and some conceded the priority and did not object. Those claimants are now barred from re-litigating their priority.

¶28 Dallas's attorney and Pain Management each has a lien on the settlement proceeds. However, neither has priority. Moreover, the reason for providing a lien is the same for each profession. Thus, there are no statutory (or equitable) bases for priority.

¶29 The deductions from the settlement, for costs and two other claimants, leave a net fund of $58,038.83. Therefore, the judgment is reversed and the case is remanded with instructions to equitably divide this sum between Dallas's attorney and Pain Management.

CONCLUSION

¶30 This is a lien priority cause where the contestants are an attorney and a physician. The attorney pursued a UM claim on behalf of his client, but did not file any lawsuit against the tortfeasor. He settled the UM claim with the insurance company, Geico. The physician provided medical services and perfected a lien. The settlement was insufficient to pay all medical providers' claims and the attorney's fee. The attorney has filed an interpleader and included endorsement of "lien claimed" on the interpleader petition. This is the first, and only, occasion for the establishment of the attorney's lien.

¶31 The physician's lien statute provides that the attorney's lien has priority when a case has been filed against the tortfeasor. The statute does not provide priority when the claim is against the insurance company under the UM clause of the policy, as is the case here. However, the purposes of the two lien statutes are the same, that is, to see that the covered professional is compensated.

¶32 Under the facts of this case, both Dallas's attorney and Pain Management have liens against the UM insurance settlement proceeds. However, neither has priority. Two medical provider's claimants did not appear and received no award. Two other medical providers have accepted the judgment without objection. Therefore, the cause is reversed as to Pain Management and remanded for the trial court to award costs to Dallas's attorney and then equitably divide the balance between Dallas's attorney and Pain Management, after deduction of payments to the two claimants who have accepted the judgment. The judgment as to the two remaining claimants is undisturbed because they either did not file an answer or did not appear at the hearing.

¶33 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

BARNES, P.J., concurs, and WISEMAN, V.C.J., concurs specially.

WISEMAN, V.C.J., concurring specially:

I concur in the Majority's Opinion, but I write separately to suggest that when, as here, the attorney bases his claim on a written contingency fee contract, the better practice is to require the production and admission of the contract, particularly when the contractual fee is at the outside allowable limit (50%) for contingent fees, and the injured party (Dallas) receives no award in this settlement under the trial court's allocation.

FOOTNOTES

[1] This appeal was assigned to this Judge and this Panel on April 4, 2019.

[2] GEICO was dismissed as a party on July 19, 2018.

[3] The trial and appellate records show that Geico has retained possession of the fund pending the outcome of the case.

[4] Tr., p. 4.

[5] Therefore, the parties' argument about whether the exhibit is a part of the appeal record is of no consequence. Moreover, Pain Management's contention that Dallas's attorney is ethically limited to the difference between the actual settlement and the $52,000.00 becomes moot.

[6] It is noted that Geico retained possession of the settlement proceeds, so Dallas's counsel does not have a possessory lien.

[7] Section 6(A) reads:

A. From the commencement of an action, or from the filing of an answer containing a counterclaim, the attorney who represents the party in whose behalf such pleading is filed shall, to the extent hereinafter specified, have a lien upon his client's cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his or her client's favor; and the proceeds thereof, wherever found, shall be subject to such lien, and no settlement between the parties without the approval of the attorney shall affect or destroy such lien, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he or she shall set forth the nature of the lien he or she claims and the extent thereof; and the lien shall take effect from and after the service of such notice, but such notice shall not be necessary provided such attorney has filed such pleading in a court of record, and endorsed thereon his or her name, together with the words "Lien claimed."

[8] The statute reads:

A. Every physician who performs medical services or any other professional person who engages in the healing arts, within their scope of practice pursuant to Title 59 of the Oklahoma Statutes for any person injured as a result of the negligence or act of another, shall, if the injured person asserts or maintains a claim against such other person for damages on account of such injuries, have a lien for the amount due for such medical or healing arts services upon that part going or belonging to the injured person of any recovery or sum had or collected or to be collected by the injured person, or by the heirs, personal representative, or next of kin of the injured person in the event of his death, whether by judgment, settlement, or compromise. Such lien shall be inferior to any lien or claim of any attorney handling the claim for or on behalf of the injured person. The lien shall not be applied or considered valid against any claim for amounts due pursuant to the provisions of Title 85A of the Oklahoma Statutes.

B. In addition to the lien provided for in subsection A of this section, every physician or professional person licensed under Title 59 of the Oklahoma Statutes who performs medical or healing arts within their scope of practice for any person injured as a result of the negligence or act of another, shall have, if the injured person asserts or maintains a claim against an insurer, a lien for the amount due for such medical or healing arts services upon any monies payable by the insurer to the injured person.

C. No lien which is provided for in this section shall be effective unless, before the payment of any monies to the injured person, the attorney for the injured person, or legal representative as compensation for such injuries or death:
1. A written notice is sent setting forth a statement of the amount claimed, identifying the insurance policy or policies against which the lien is asserted, if any, and containing the name and address of the physician or professional person licensed under Title 59 of the Oklahoma Statutes claiming the lien, the injured person, and the person, firm, or corporation against whom the claim is made, is filed on the mechanic's and materialman's lien docket in the office of the county clerk of the county where the principal office of the physician or professional person licensed under Title 59 of the Oklahoma Statutes is located; and
2. The physician or professional person licensed under Title 59 of the Oklahoma Statutes sends, by registered or certified mail, postage prepaid, a copy of such notice with a statement of the date of filing thereof to the person, firm, or corporation against whom the claim is made and to the injured person. The physician or professional person licensed under Title 59 of the Oklahoma Statutes shall also send a copy of the notice to the attorney for the injured person, if the name and address of such attorney is known to the physician or professional person licensed under Title 59 of the Oklahoma Statutes.
D. The liens provided for in this section may be enforced by civil action in the district court of the county where the lien was filed. Such an action shall be brought within one (1) year after the physician or professional person licensed under Title 59 of the Oklahoma Statutes becomes aware of final judgment, settlement or compromise of the claim asserted or maintained by or on behalf of the injured person. The practice, pleading, and proceedings in the action shall conform to the rules prescribed by the Oklahoma Pleading Code to the extent applicable.

[9] The 2018 amendment only recognized the renumbering of the Worker's Compensation Code.

[10] Pain Management's reliance on Hudson v. Fisher, 2010 OK CIV APP 69, 239 P.3d 970, is misplaced. There, a lawsuit was filed, an attorney's lien perfected, and a settlement was obtained through mediation. Then, counsel filed the interpleader, but failed to notify a physician lienholder, even though this lienholder was known. The trial court apportioned the fund, with priority to the attorney's lien. The omitted lienholder moved to vacate, and the trial court agreed. After a hearing, the trial court ordered a refund from the attorney of the portion of the fund that would have gone to the omitted physician. It was this portion of the fund that the Hudson Opinion referenced when it stated that the attorney did not have a priority.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 69, 239 P.3d 970, HUDSON v. FISHER
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 2002 OK 60, 52 P.3d 1014, MYERS v. MISSOURI PACIFIC RAILROAD CO.
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 2007 OK 21, 158 P.3d 461, OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed
 2008 OK 21, 184 P.3d 518, ESTES v. CONOCOPHILLIPS CO.
Discussed
 1982 OK 72, 650 P.2d 857, Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.
Discussed at Length
 1983 OK 41, 662 P.2d 681, Uptegraft v. Home Ins. Co.
Discussed
Title 5. Attorneys and the State Bar
 Cite
Name
Level

 5 O.S. 6, Attorney's Lien Upon Cause of Action - Procedure - Notice to Defendants - Filing - Settlements - Action to Enforce
Discussed
Title 42. Liens
 Cite
Name
Level

 42 O.S. 46, Lien for Medical Services
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA