**M.-K.-T. R. CO. v. EMBREY, Adm'x.**

Nos. 22740, 22741. April 17, 1934.

Rehearing Denied June 12, 1934.

434

M. D. Green, John E. M. Taylor, and Eric Haase, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison & Sons, for defendant in error.

OSBORN, J. This action was commenced in the district court of Atoka county by Emma Embrey, administratrix of the estate of Ora Embrey, deceased, as plaintiff, against the Missouri-Kansas-Texas Railroad Company, as defendant, wherein she sued under the Federal Employers' Liability Act for damages for the death of her husband, Ora Embrey. The jury returned a verdict for plaintiff, and from a judgment thereon, defendant has appealed. The parties will be referred to as they appeared in the trial court.

It appears that Ora Embrey, the deceased, was employed by defendant as a locomotive fireman; that on February 24, 1928, the locomotive on which deceased was riding was derailed and the deceased thereby received fatal injuries. The record shows that one Vincent Williamson, a young man of low mentality, who had escaped from a state institution for feeble minded in Oregon, with the assistance of a negro companion, had disconnected the rails of defendant company at the point of the accident. It is not disputed that this was the direct cause of derailment of the locomotive which caused the fatal injuries to deceased. It is contended by plaintiff that said miscreants also disconnected the signal wires of defendant at the point of the derailment, and that the separation of the rails and the disconnection of the wires would have set the signal system in operation and that the signal light nearest the point of the wreck would have shown red, which in railroad parlance means "stop," and that the signal light approximately one mile further back on the track would have shown yellow, which means "proceed slowly and with caution." It is charged that the engineer of said train negligently and carelessly failed to observe said warning signals and ran the train at full speed to the point where the rails had been separated, and was guilty of negligence in failing to keep a lookout for said signals and in failing to observe the same and to stop the train and thereby avoid the accident.

Defendant filed a general denial, together

with a plea of contributory negligence and assumption of risk of said employment. A motion for new trial was filed and overruled. An appeal was perfected to this court, being No. 22740. Thereafter a motion for new trial was filed by defendant on the grounds of newly discovered evidence, which was overruled by the court and an appeal was perfected from said order to this court, being No. 22741. By appropriate order, the two appeals have been consolidated and will be considered together.

Defendant contends that the trial court erred in overruling a motion to suppress the deposition of Vincent Williamson on the ground that the said Williamson was incompetent to testify. As before stated, the said Williamson was of low mentality; of a type sometimes referred to as a moron. Evidence was introduced showing that he had been committed to an institution for the feeble minded in the state of Oregon when 15 years of age; that he was examined at that time and found to have 62 per cent. mental power, and at 15 years of age he had the mental capacity of a boy of 9; that he had completed the 5th grade in school. It is shown that he pleaded guilty to the charge of wrecking the train and received a sentence of ten years in the reformatory. Later he pleaded guilty to murder and was sentenced to life imprisonment in the penitentiary. It was there the depositions were taken. This evidence was submitted to the trial court, and the court then examined the depositions which were offered and made the following observation:

"Gentlemen, after carefully reading the depositions and confessions of this witness in question, and taking into consideration the statement of the psychologist that committed him to this institution; taking into consideration his intelligence and his prompt answers and clear details that he has given about various things that happened, I am convinced there is no question about the fact that he might be a person who would commit perjury and all that—I still think he is competent to testify. I think he understands the nature of an oath; I think his intelligence is sufficient that he could be classed as a witness; and in that case the motion to suppress the depositions will be overruled."

The rule relating to the question presented here is found in the early case of City of Guthrie v. Shaffer, 7 Okla. 459, 54 P. 698, and is stated as follows:

"The statutes, by 'persons of unsound mind,' as used in section 335. Code Civ. Proc. St. Okla. 1893 (sec. 272, O. S. 1931), relating to the competency of witnesses, means persons whose minds are so defective that they cannot correctly relate facts, and do not understand or realize what they are saying or doing. If one is sufficiently intelligent to understand the nature of an oath, and can correctly relate facts and circumstances, he should be permitted to testify. The trial court must determine, on examination of the witness, and from other evidence, if necessary, as to whether or not he can do that, and the jury alone must determine the weight to which said testimony is entitled."

The Criminal Court of Appeals, in the case of Adams v. State, 5 Okla. Cr. 347, 114 P. 347, said:

"When a witness is objected to on the ground that he or she is incompetent by reason of want of intelligence, it is the province of the trial court to determine the witness' competency and its decision will not be reviewed unless there is a clear abuse of discretion."

In the case of District of Columbia v. Armes, 27 L. Ed. 618, it is said:

"Whether a lunatic or insane person has sufficient understanding to be admissible as a witness is a question to be determined by the court upon examination of the party himself and of any competent witnesses who can speak to the nature and extent of his insanity. It is for the jury to decide what amount of credit they will give to his testimony."

We have examined the testimony of said witness, and in the light of the evidence relating to the degree of mentality which he possessed, we cannot say that the trial court abused its discretion in permitting the testimony of said witness to go to the jury.

It is contended that there was no evidence to corroborate the evidence of the witness Williamson. He testified by deposition and was carefully examined and cross examined by counsel. He stated that he was mad at the railroad company on account of being put off a freight train by a brakeman and his motive in wrecking the train was revenge. He described in detail the manner in which the rails were separated. He stated that the nuts were unscrewed from the bolts and the flanges which held the rails together were removed; that a number of spikes were pulled from each of the rails; that one of the rails was pushed in and the other out; and that the bond wires or the electric wires which connected the rails and carried the electric current to work the signal system were torn loose as the rails were separated. Other witnesses who examined the rails after the wreck testified as to the nuts being unscrewed and the bolts

removed and the spikes having been pulled from the rails. As to the damage done to the tracks by Williamson and his negro companion, the testimony is amply corroborated.

Defendant further contends that there is no evidence to show negligence, and that its demurrer to the evidence should have been sustained. In this connection plaintiff relies in the main on circumstantial evidence. It is well established by the evidence that the signal system was in good working order immediately prior to the wreck and immediately thereafter. The testimony of Williamson is that he and his companion had completed the separation of the rails before the train came in sight; that they left the scene and did not see the wreck. The testimony of Sam Bowser, the engineer of the wrecked train, was that he did not see anyone on the track near the scene of the wreck. He further testified that the speed of the train was about 45 miles per hour.

The evidence shows that it was less than a mile from the scene of the wreck to the first signal, which would have shown red, and less than two miles to the second signal, which would have shown yellow. In other words, the jury may have believed that Williamson and his companion had completed the damage to the track within sufficient time prior to the wreck for the train to have covered the distances involved at a rate of speed of 45 miles per hour.

In the case of Farmers State Bank v. Hess, 138 Okla. 190, 280 P. 305, it is said:

"In a law action tried to a jury, this court is without authority to review the evidence further than is necessary to determine whether or not there is any competent evidence reasonably tending to support the verdict of the jury."

In the case of St. L.-S. F. Ry. Co. v. Floyd, 146 Okla. 142, 293 P. 250, it is said:

"The sufficiency of the evidence to sustain a judgment will be determined in the light of the evidence tending to support same, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts therewith."

In the case of Marland Refining Co. v. Snyder, 125 Okla. 260, 257 P. 797, it is said:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury."

Upon the submission of this circumstantial evidence to the jury, it was called upon to decide whether or not the signal lights were burning when the train passed. They might have decided either way on this state of facts. The question is a pure question of fact, which comes within the province of a jury. There is nothing unreasonable or illogical in their conclusion that the lights were in fact burning when the train passed. Such conclusion finds ample support in the evidence.

It is true that the witness Sam Bowser, the engineer, testified that the signals showed clear as he passed them, and in this connection we call attention to the rule announced in Reed v. Scott, 50 Okla. 757, 151 P. 484, which holds that a jury may, if they so decide, accept circumstantial evidence on one side and reject positive testimony presented on the same point by the other side.

Defendant's motion for a new trial on the ground of newly discovered evidence is based upon an affidavit signed by the witness Williamson, about six months after the trial of the cause in the district court, in which the said Williamson offered to change his testimony to the effect that instead of breaking both of the bond wires he left them intact when he tampered with the defendant's track. The affidavit states that the previous testimony offered by the witness was untrue and was made on account of some promises made to him.

This court has many times announced the rule relating to the granting of new trials on newly discovered evidence, which is as follows:

"A rule of wide recognition regarding the granting of new trials on the ground of 'newly discovered evidence' exacts that the evidence fulfill the following requirements: (1) It must be such as will probably change the result; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence." Midland Valley R. Co. v. Goble, 77 Okla. 206, 186 P. 723.

See, also, Wachstetter v. Challinor, 114 Okla. 119, 244 P. 194; Federal Nat. Bank v. Sartin, 114 Okla. 244, 246 P. 617; Bryan v. Ramsey, 115 Okla. 133, 242 P. 222; Poynter v. Beacon Falls Rubber Co., 115 Okla. 245, 242 P. 563; Flesner v. Cooper, 62 Okla. 263, 162 P. 1112; First Nat. Bank of Taloga v. Farmers' State Guaranty Bank, 62 Okla. 30, 161 P. 1063; Ellis v. Mid-Continent Oil & Gas Co., 65 Okla. 124, 165 P. 177; Eskridge v. Taylor, 75 Okla. 139, 182 P. 516; Rock v

Craig & Osborne, 78 Okla. 254, 190 P. 388; Chortney v. Curry, 78 Okla. 206, 190 P. 387; City of Sapulpa v. Deason, 81 Okla. 51, 196 P. 544.

It is also well settled that the granting of a new trial rests largely in the discretion of the trial court. Summers v. Williams, 128 Okla. 9, 260 P. 1064; Jones v. Oklahoma Planing Mill & Mfg. Co., 47 Okla. 477, 147 P. 999.

It is evident that the only purpose in offering the so-called newly discovered evidence was for the impeachment of the witness or contradiction of evidence previously offered. In consideration of the degree of mentality of the witness, and the failure of defendant to establish its right to a new trial under the well-established rule, there was no abuse of discretion on the part of the trial court in overruling the motion for a new trial.

Other contentions of defendant relate to the admissibility of certain evidence and certain instructions given to the jury. We have examined the record, and find that no testimony was introduced which tended to prejudice any substantial right of defendant, and the instructions of the court, when taken as a whole, fairly and adequately presented the issues involved.

The judgment of the trial court is affirmed.

CULLISON, V. C. J., and ANDREWS, McNEILL, BAYLESS, BUSBY, and WELCH, JJ., concur. RILEY, C. J., and SWINDALL, J., absent.