## ABRAMS v. NEAL, Adm'r.

No. 28127.   April 19, 1938.

Rehearing Denied May 10, 1938.

E. C. Fitzgerald and J. G. Austin, for plaintiff in error.

Frank Nesbitt and L. A. Wetzel, for defendant in error.

CORN, J. This is an appeal from a judgment rendered in the district court of Ottawa county, in an action brought by the defendant in error, Neal, as administrator of the estate of Melissa J. Abrams, against Earl Abrams, plaintiff in error and son of said deceased, for conversion of certain government bonds belonging to the estate. Hereafter we shall refer to the parties as they appeared in the trial court.

September 21, 1934, Melissa J. Abrams was stricken with apoplexy, and on December 24, 1934, she died, leaving a large estate composed of personal property, land, and government bonds. Before her last illness she had told Sam Abrams, another son, that she had $40,000 in registered govern-

ment bonds and in excess of that amount in government coupon bonds in safe-deposit boxes in the First National Bank of Miami, Okla.

Shortly after her death the plaintiff, together with Sam Abrams, the defendant, and certain attorneys, inspected the deceased's safe-deposit boxes, and it was then disclosed that there were no coupon bonds. Bank records showed the defendant had entered his mother's safe-deposit boxes the first time the day after she became ill, and the second time on October 1, 1934, while she was still seriously ill. This the defendant at first denied, but during inquisition proceedings before the county court he admitted entering them and taking one $500 bond and one $1,000 bond, which he declared was for his mother's sick expenses, although it was shown that prior to this time his mother had opened an account containing nearly $2,000 to defray her sick expenses.

Bank officials testified from their own knowledge and from bank records as to seeing coupon bonds, as to their knowledge of the deceased having purchased various amounts of bonds, and produced records showing deposit credits in amounts indicating the same were derived from bond interest coupons. The records of the bank between February 15, 1932, and April 11, 1934, showed the deceased deposited $4,929.19 in interest coupons, which amount indicated the amount of bonds owned by her to have been $40,500. It was admitted that she owned $1,500 in treasury bonds, making a total of $42,000 in coupon bonds. The records also showed deceased to have entered her safe-deposit boxes on dates corresponding to the bank's records showing deposit of interest coupons.

The jury returned a verdict for the plaintiff in the amount of $29,500. Motion for new trial and amended motion for new trial on the ground of newly discovered evidence were overruled and judgment rendered upon the verdict.

The defendant predicates his claim for reversal upon two propositions: First, the court erred in overruling a demurrer to the plaintiff's evidence, it being insufficient to show that he converted any bonds belonging to his mother. Second, the court erred in overruling the motion for new trial and the amended motion for new trial, the evidence being insufficient to show Mrs. Abrams owned $29,500 of coupon bonds at the time of the alleged conversion.

The evidence showed April 11, 1934, as the last day upon which Mrs. Abrams ever opened her safe-deposit boxes. Further, Albert Trudgeon, bank teller, established by his testimony that upon this particular day she clipped coupons from the bonds, which he saw lying on the table. Thereafter Mrs. Abrams returned the bonds to her box and Trudgeon locked them back in the vault for her.

More than four months after this, she told her son, Sam Abrams, that she owned in excess of $40,000 in coupon bonds, and his testimony regarding this was not objected to at the trial; hence, under the rules announced by this court, objection cannot now be made to the admission of such testimony.

When the deposit box was opened by the administrator it was found not to contain any coupon bonds. Sam Abrams then questioned his brother whether he had entered the box, and the defendant replied that he had not. However, during the inquisition proceedings he admitted two entries and the taking of two bonds as above mentioned, but testified this was necessary to have money with which to pay sick expenses. It was shown, however, that before her illness Mrs. Abrams deposited nearly $2,000 for this purpose, and defendant admitted on cross-examination to paying hospital bills totaling less than $200.

In connection with this evidence, the defendant's handling of the two bonds he admitted taking is worthy of notice. After taking them he went to Joplin, Mo., and placed them in a box which he leased in the Conqueror Trust Company. Later he exchanged the $500 bond for a cashier's check, brought this back to Miami, Okla., and deposited it, not in the account to be used for sick expense, but to his own personal account. The $1,000 bond was kept in his box at the Conqueror Trust Company until November 29, 1934, when he cashed it and opened a personal checking account in that bank.

The question whether the defendant did convert the bonds was submitted to the jury under proper instructions which stated the law to be applied to the facts, and the jury returned a verdict for the plaintiff. The testimony as to the conversion was conflicting, and was therefore properly submitted to the jury.

As heretofore announced by this court, where a law case is tried to a jury and the evidence on material questions of fact is in conflict, but is sufficient to reasonably sus-

tain the verdict of the jury, such verdict and judgment will not be set aside on appeal. See Abrams v. Neal, 179 Okla. 559, 66 P.2d 922; Universal Credit Co. v. McBrayer, 176 Okla. 402, 55 P.2d 1008; Vammen v. Kinsey, 181 Okla. 92, 72 P.2d 497; and Mid-Continent Life Insurance Co. v. Wylie, 181 Okla. 200, 72 P.2d 778.

Under the second proposition the defendant sets up the lack of evidence to show Mrs. Abrams ever owned $29,500 in coupon bonds at the time of the alleged conversion. In the defendant's answer he set up that if any bonds had ever been purchased by his mother, they were not in the box on the date alleged. In his attorney's opening statement at the trial it was stated that she did not own in excess of $14,000 in coupon bonds. In the affidavits for motion for new trial on grounds of newly discovered evidence it was stated that the amount of coupon bonds did not exceed $16,500. Now, according to the table of calculations in the defendant's brief, the deceased could never have owned over $22,100 of government coupon bonds. However, no reasons are stated for these numerous changes of contentions.

Two distinct lines of testimony are brought out in the record as to the amount of coupon bonds owned after April 11, 1934. First is the testimony of Sam Abrams. Next are the calculations, based upon actual amounts, calculated from the bank's records of coupon deposits as made by Mrs. Abrams herself.

The testimony of Sam Abrams was not objected to, and hence was properly considered in determining the question. More than this, however, was the testimony based upon these calculations made from the bank records. This testimony, whether considered for the entire term of deposit, year by year or by single items, certainly established that Mrs. Abrams did have these government bonds in her safe-deposit box, and the evidence was sufficient in all respects to sustain the verdict of the jury.

The defendant further complains of the trial court's refusal to grant motion for new trial, and the refusal to grant the amended motion for new trial on the grounds of newly discovered evidence.

Immediately upon close of the trial the defendant's attorney procured affidavits of certain officials of the banks which had records showing Mrs. Abrams' business transactions relating to the bonds in question. These affidavits stated that the evidence, given by deposition to be used in the trial of this cause, was the result of only a hurried examination of the records. However, the defendant's attorneys were present when these depositions were taken, knew they were to be used in the trial and had sufficient time to examine both the records and the officials who testified at that time, but did not make use of the opportunity.

These same officials made affidavits that neither the defendant nor his attorneys had ever made any attempt to examine the records of their banks relative to deceased's bond purchases, although it appeared that such further search would have revealed the true condition of her affairs, which information is now claimed as newly discovered evidence entitling the defendant to a new trial.

In the recent case of M.-K.-T. Ry. Co. v. Embrey, 168 Okla. 433, 33 P.2d 481, certiorari denied 55 S. Ct. 119, 29 U. S. 603, 79 L. Ed. 695, in passing upon such a motion as in the case at bar, this court used the following language. The fifth paragraph of the syllabus is as follows:

"A rule of wide recognition regarding the granting of new trials on the ground of 'newly discovered evidence' exacts that the evidence fulfil the following requirements: (1) It must be such as will probably change the result; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence."

This statement follows the rule laid down by this court in decisions too numerous to mention.

Conceding that the defendant did not discover this evidence until after the trial, it was such as could easily have been discovered prior to the trial by exercise of due diligence. Furthermore, there was a failure to show that this evidence would have changed the result of the trial. We are of the opinion that the trial court properly overruled the motion for new trial on grounds of newly discovered evidence.

The judgment of the trial court is affirmed.

RILEY, PHELPS, GIBSON, and HURST, JJ., concur.