IN RE THE MARRIAGE OF MORGAN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE THE MARRIAGE OF MORGAN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE THE MARRIAGE OF MORGAN
2019 OK CIV APP 5
438 P.3d 837
Case Number: 116503
Decided: 12/13/2018
Mandate Issued: 01/30/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 5, 438 P.3d 837

 

IN RE THE MARRIAGE OF:

HEATHER MARIE MORGAN, now GRUENBERG, Petitioner/Appellee,
v.
MARK RAY MORGAN, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
ROGERS COUNTY, OKLAHOMA

HONORABLE LARA M. RUSSELL, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART AND REMANDED, AND VACATED IN PART

Nancy K. Anderson, Oklahoma City, Oklahoma, for Petitioner/Appellee

Patrick H. McCord, N. SCOTT JOHNSON & ASSOCIATES, P.L.L.C., Tulsa, Oklahoma, for Respondent/Appellant

KEITH RAPP, JUDGE:

¶1 Trial court respondent, Mark Ray Morgan, (Father) appeals the trial court's Order for Parental Support of a Disabled Adult Child ordering Father to pay support for his disabled adult son. Father also appeals the trial court's order awarding attorney's fees to Heather Marie Morgan, now Gruenberg (Mother).

BACKGROUND

¶2 Father and Mother were married on June 11, 1994, and had one child, SCM, born August 22, 1998. SCM was born with autism spectrum disorder with speech delay and intellectual disability. The parties divorced on April 12, 2004, and the trial court awarded custody of SCM to Mother, with reasonable visitation to Father. The trial court ordered Father to pay $630.09 per month, which included $557.30 in child support calculated pursuant to the Child Support Guidelines and $72.79 as Father's contribution toward the cost of speech therapy for SCM. The trial court also ordered that Mother would be responsible for 42% and Father 58% of SCM's uncovered medical expenses.

¶3 Father lives out-of-state and has limited interaction with his son, SCM.

¶4 SCM graduated, with accomodations, from Inola High School in Inola, Oklahoma, in May 2016. He turned 18 later that year, on August 22, 2016.

¶5 Prior to SCM's 18th birthday, on May 16, 2016, Mother filed a Motion for Parental Support of a Disabled Child. Mother alleged SCM requires "substantial care and personal supervision and will never be capable of self-support" and that as a result of the care and expenses due to his preexisting disability, the trial court should order Father to pay financial support for SCM pursuant to Title 43 O.S.2011 §112.1A. Mother requested child support calculated according to the Oklahoma Child Support Guidelines through August 2016, and, beginning in September 2016, support for SCM calculated based on the factors set forth in Title 43 O.S.2001 § 112.1A(E).

¶6 Father filed a Motion to Determine Overpayment on January 30, 2017. Father argued that, under the Decree of Divorce, his child support included an amount of $72.79 per month for speech therapy for SCM. Father alleged SCM ceased receiving speech therapy although Father continued to pay for the therapy. Father also alleged he paid for medical expenses that Mother did not incur. Father asked the trial court to determine the amount of overpayment and to enter a judgment against Mother and in favor of Father in the amount of the alleged overpayment. Father also requested an award of attorney fees and costs.

¶7 In response to Father's request for overpayment, Mother denied Father was entitled to an award for overpayment of child support or medical expenses. Mother alleged the parties mutually agreed that SCM would attend a private reading tutor instead of speech therapy and that Father never complained about contributing to payment for the reading tutor. Mother also alleged SCM quit seeing a reading tutor while in high school, which she also discussed with Father. Father did not request overpayment nor did he ask to recalculate the child support. Mother stated she paid medical expenses for SCM and did not ask Father to contribute payment for those expenses. Mother alleged there was an "understanding between the parties that the [child] support amount would stay the same." Mother also argued that, even after she filed her Motion for Parental Support for a Disabled Child, Father did not complain about the alleged overpayment or request to be reimbursed. Mother asked the trial court to deny Father's request for overpayment and an award of attorney's fees.

¶8 After several continuances, the trial court set this matter for trial on May 15, 2017.

¶9 On April 28, 2017, Father filed a Motion to Dismiss, arguing the trial court should dismiss Mother's Motion for Parental Support for a Disabled Child as there was no cognizable legal theory on which she could prevail. Father argued SCM was "capable of the minimum level of financial self-support." Father also alleged the trial court must consider all the resources available to support SCM, including government financial assistance.

¶10 Father also filed a Motion to Recuse on April 28, 2017, asking the trial court to order Mother's counsel to disqualify himself from representation of Mother because he represented Father's current wife in an unrelated matter approximately ten years previously.

¶11 The trial court entered a Minute Order on May 4, 2017, denying Father's Motion to Dismiss and Motion to Recuse. The trial court stated the trial remained set for May 15, 2017.

¶12 Father subsequently issued a subpoena to SCM at his current place of employment, Rogers State University. Mother filed a Motion to Quash Subpoena, arguing SCM was not subject to service of process or subpoena because he was the subject of a guardianship proceeding.

¶13 The trial court conducted a two-day trial beginning on May 15, 2017, and concluding on July 31, 2017. At trial, Mother presented several physicians and developmental experts to testify concerning SCM's cognitive limitations. Dr. Pamela A. Jarrett, SCM's pediatrician, testified SCM was diagnosed with Autistic Spectrum Disorder with Aspergers Characteristics and ADHD when he was eight years old, in May 2006. She stated that SCM has limited cognitive abilities and that the diagnosis is permanent and not expected to change. She also testified that SCM has an IQ of a third or fourth grader. She stated SCM needs a limited legal guardian to help with certain decisions and a job coach to assist with employment. Concerning employment, Dr. Jarrett testified SCM would require close supervision and he would require a limited job scope. She also stated he would not be able to solely provide for his daily living cost and care. In addition, she testified that SCM suffers from anxiety and should not be alone at home for more than one to two hours a day. She also stated that he should not drive.

¶14 Stefani L. Northcutt, a psychometrist that specializes in special education testing, such as IQ and achievement testing, testified SCM tested at below to well below average.

¶15 Dr. Cynthia Jean Fuller, a developmental pediatrician and one of SCM's previous pediatricians, also testified concerning SCM's cognitive disabilities and ability to be employed. Dr. Fuller testified that SCM needs financial assistance because the type of job he is able to perform will not pay a livable wage. She stated SCM currently cleans tables at the cafeteria at Rogers State University and needs assistance to keep him on task. She opined that his overall function is that of a seven or eight year old. She also opined he was unable to function independently for activities of everyday life and currently functions at the level of a fourth grader.

¶16 Mother also presented the testimony of Pamela Meyer, SCM's supervisor at Rogers State University. Ms. Meyer testified SCM's job responsibilities include cleaning the tables and wiping down and refilling salt/pepper shakers. SCM needs constant supervision and needs a job coach to keep him on task. She said she had to move SCM to six hours a day because he was unable to handle working eight hours a day. Ms. Meyer testified SCM is paid $8.75 per hour, but is not paid during breaks, such as spring break, fall break, or summer break.

¶17 Mother also testified at the trial. Mother testified SCM made $4,000 in income in 2016 and introduced supporting documentation. Mother testified SCM might make approximately $10,000 in 2017. She stated SCM's income is used to pay for his I-pad, Disney channel, and other entertainment expenses, but does not pay for the essential overhead costs. She also stated she does not seek unemployment for SCM when he is laid off during the summer because SCM is unable to look for employment, which is a requirement to obtain unemployment. Mother also testified that she has not applied for government financial assistance because she was told it would probably be denied. She also testified she believes SCM is her and Father's responsibility, not the government's responsibility. Mother stated SCM is unable to live independently.

¶18 In addition, Mother testified she covers SCM on her insurance so she has not looked into Sooner Care. She stated SCM turned eighteen on August 22, 2016, and Father's last support payment was on August 15, 2016. Concerning the speech therapist costs that ceased, Mother testified she and Father agreed that SCM would meet with a reading tutor after he quit seeing the speech therapist and that Father's $72.79 payment would be applied to the reading tutor. She said that, after SCM quit seeing the reading tutor, the parents verbally decided child support would be increased if they returned to court so they left the child support as originally ordered.

¶19 After the close of Mother's case, the trial court heard argument on Mother's Motion to Quash Subpoena. SCM was represented by an attorney during this argument. The trial court ruled that he would conduct an in-camera interview of SCM and then rule on the Motion to Quash Subpoena after talking with SCM. After the in-camera interview, the trial court sustained Mother's Motion to Quash Subpoena. The trial court stated:

My interview indicates that [SCM] would not be able to be sworn, would not be able to understand what we are doing here and accurately answer questions. [SCM] was extremely nervous shaking, holding onto stuffed animals that he brought for support, was very scattered in his thoughts. For those reasons the subpoena is hereby quashed and we will proceed with testimony.[1]

¶20 In support of his case, Father presented the testimony of Amy Morgan, his sister. Ms. Morgan testified she does not have an educational background dealing with cognitive disabilities, but has worked in the area. Ms. Morgan stated she thought SCM could live in a group home and that it was possible for him to live independently with training and assistance.

¶21 Father also testified at trial. He stated he did not have any verbal agreement with Mother concerning the funds originally paid for the speech therapist and that he did not discuss the child support with Mother. He opined that SCM's money should be used on necessities, not entertainment, and that SCM needs to learn to live independently. Father also testified he thought Mother should be required to pursue government financial assistance for SCM.

¶22 Father admitted he had not had contact with SCM since he turned eighteen years old and had lost contact with him. Father stated he thought SCM could work full-time and support himself.

¶23 After hearing testimony and reviewing the evidence presented at trial, the trial court denied Father's Motion for Overpayment of Child Support and granted Mother's request for support for SCM. The court held:

Based upon the evidence presented, my review of the exhibits and notes from our beginning of trial and the evidence presented today, Mr. Morgan's Motion for Overpayment of Child Support is denied. Mr. Morgan did not meet his burden in showing that the calculations would be different or lower had they been recalculated.

Further, I find that his testimony related to the services provided for [SCM] to be unreliable based on all of the information presented about the needs of the, at that time, minor child.

Based upon the testimony of both expert and lay witnesses, it's clear that the level of care for [SCM] has not diminished in any way based on his reaching majority. He's an adult by number only.

As a matter of fact, the level of care required by his mother has increased based on him no longer being in public school.

. . . .

[SCM] is an adult child who requires substantial care and personal supervision because of a mental disability, who is not capable of self-support. It's uncontroverted that this disability existed before [SCM's] eighteenth birthday.

Adult child support will be ordered pursuant to the Child Support Guidelines with [Mother] calculated at her testified income amount. Five thousand dollars will be added to her income to account for [SCM]'s income. [Father] will be calculated at his income shown on his 2016 tax return.[2]

The trial court also ordered Father would have three years to pay back the support for the time after the Motion was filed.

¶24 The trial court entered an Order for Parental Support of a Disabled Adult Child, filed on October 5, 2017. The trial court found:

The Court finds that the parties' now-adult child, [SCM], born August 22, 1998, suffers from a mental disability that existed prior to his eighteenth birthday, and as a result of this disability requires substantial care and personal supervision and is not capable of self-support.

¶25 The trial court ordered Father to pay Mother the sum of $649.03 per month, beginning September 1, 2016, as adult child support for [SCM] until further order of the court. The trial court also found Father stopped paying child support following [SCM's] 18th birthday and, therefore, owed past due child support in the amount of $7,788.36. The court ordered Father to repay the arrearage within thirty-six months and to pay $216.34 per month on the judgment, beginning September 1, 2017. The trial court also ordered that Mother shall pay 54% and Father 46% of the reasonable and necessary physical or mental health expenses for [SCM] not covered by insurance or some other third-party coverage. In addition, the trial court denied Father's Motion for Overpayment.

¶26 Mother subsequently filed an Application for Attorney's Fees, which the trial court granted in part. Mother requested attorney's fees in the amount $14,168.41 and the trial court awarded Mother $8,000 in attorney's fees. The trial court held:

1. The Court finds that the delays and complications that arose prior to trial were well beyond those expected, even considering the busy schedules of the trial attorneys and litigants.
2. The Court finds that [Father's] conduct created additional attorney fees for [Mother].
3. The court grants, in part, the Petitioner's Application for Attorney Fees. The Court awards [Mother] the sum of $8,000.00 and hereby enters a judgment in favor of the Petitioner against the Respondent in the amount of $8,000.00, all over the Respondent's objection.

¶27 Father appeals both the trial court's Order for Parental Support of a Disabled Adult Child and Order on Petitioner's Application for Attorney Fees.

STANDARD OF REVIEW

¶28 Matters relating to child support are addressed to the sound legal discretion of the trial court and will not be reversed absent a showing of abuse of discretion or that the decision is clearly contrary to the weight of the evidence. Merritt v. Merritt, 2003 OK 68, ¶ 7, 73 P.3d 878, 882 (citations omitted).

¶29 "The question of whether an award of attorney's fees is authorized presents a question of law, subject to de novo review on appeal." Hall v. Dearmon, 2015 OK CIV APP 40, ¶ 11, 348 P.3d 1107, 1109. The reasonableness of the trial court's award of attorney's fees is reviewed for abuse of discretion. Id. This Court will not disturb an attorney's fee award unless the appellate court finds the trial court made a clearly erroneous conclusion and judgment against reason and evidence. Green Bay Packaging, Inc. v. Preferred Packaging, Inc., 1996 OK 121, ¶ 32, 932 P.2d 1091, 1097.

ANALYSIS

¶30 Father first argues the trial court did not have subject matter jurisdiction over Mother's request for financial support for SCM due to the pendency of the guardianship action involving SCM and, therefore, erred as a matter of law by not declining jurisdiction in the support action.

¶31 Father argues the trial court did not have jurisdiction to decide the financial support issue, relying on Title 30 O.S.2011 § 1-113. Section 1-113 provides:

A. A guardian of the person or property, or both, of a person residing in this state, who is a minor, or an incapacitated or partially incapacitated person, may be appointed in all cases by the court as provided in this title.

B. After the service of notice in a proceeding seeking the appointment of a guardian or other order, in subsequent proceedings pertaining to the guardianship of a ward and until termination of the proceeding, the court in which the petition is filed has exclusive jurisdiction to determine:

1. the need for a guardian or other order; and
2. how the estate of the ward shall be managed, expended, or distributed to or for the use of the ward or the dependents of the ward.

(Emphasis added.) Father focuses his argument on the emphasized language above, arguing the action for financial support was an action concerning the estate of the ward and how the estate would be "managed, expended, or distributed to or for the use of the ward" and, therefore, the guardianship court had jurisdiction, not the trial court here.

¶32 This Court does not agree. The current support action is not one "pertaining to the guardianship of a ward" and does not involve how the ward's estate shall be managed, expended, or distributed to or for the ward's use. Furthermore, Father's interpretation is in conflict with the language of Title 43 O.S.2011 § 112.1A[3], that provides for the support of an adult child with disabilities. Section 112.1A provides in part:

2. A court that orders support under this section shall designate a parent of the child or another person having physical custody or guardianship of the child under a court order to receive the support for the child. The court may designate a child who is eighteen (18) years of age or older to receive the support directly.

C. 1. A suit provided by this section may be filed only by:
a. a parent of the child or another person having physical custody or guardianship of the child under a court order, or
b. the child if the child:
(1) is eighteen (18) years of age or older,
(2) does not have a mental disability, and
(3) is determined by the court to be capable of managing the child's financial affairs.

(Emphasis added.) The express language of Section 112.1A reflects the Legislature's intent that a person having guardianship of an adult child with disabilities be able to bring an action for support.[4]

¶33 This Court finds that under the facts and applicable law, the trial court did not err in finding it had subject matter jurisdiction to decide this matter.

¶34 Father next argues he was denied due process of law by the trial court's decision to quash Father's subpoena for SCM to testify. Father argues he was unable to fully present his case because he was unable to call SCM as a witness.

¶35 The determination of the competency of a witness to testify is a matter for the trial court's discretion. "[I]t is the province of the trial court to determine the witness' competency, and its decision will not be reviewed unless there is a clear abuse of discretion." Missouri-Kansas-Texas Railroad Co.v. Embrey, 1934 OK 238, ¶ 6, 33 P.2d 481, 483 (citing Adams v. State, 1911 OK CR 87, 114 P. 347).

¶36 Here, the trial court examined SCM in camera and determined SCM was unable "to be sworn, would not be able to understand what we are doing here and accurately answer questions." After examining SCM and considering the previous testimony about SCM's cognitive disability and limitations, the trial court determined SCM was unable to understand and participate in the proceedings. This Court, based on the evidence presented at the trial, finds the trial court did not abuse its discretion in granting Mother's motion to quash the subpoena of SCM.

¶37 Father next argues the trial court erred in its award of post-majority support for SCM, a disabled adult child. Father argues the trial court erred in using the Oklahoma Child Support Guidelines to calculate support for SCM under Title 43 O.S.2011 § 112.1A. Father also contends the trial court was required to consider whether SCM was eligible for government financial assistance to reduce or eliminate Father's support obligation under Section 112.1A.

¶38 Thus, the issue here presented is whether the Oklahoma Child Support Guidelines should be used to calculate financial support for an adult child with disabilities under Title 43 O.S.2001 § 112.1A. This Court responds in the negative for the reasons set out herein.

¶39 Section 112.1A(E) provides the basis for determining child support for an adult child with disabilities. Section 112.1A(E) sets forth the factors the trial court must consider in determining support:

E. In determining the amount of support to be paid after a child's eighteenth birthday, the specific terms and conditions of that support, and the rights and duties of both parents with respect to the support of the child, the court shall determine and give special consideration to:

1. Any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;

2. Whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial care or personal supervision of the adult child;

3. The financial resources available to both parents for the support, care, and supervision of the adult child; and

4. Any other financial resources or other resources or programs available for the support, care, and supervision of the adult child.

F. An order provided by this section may contain provisions governing the rights and duties of both parents with respect to the support of the child and may be modified or enforced in the same manner as any other order provided by this title.

¶40 Although this Court has not found an Oklahoma Supreme Court case addressing this issue, this Court addressed the issue in an unpublished opinion In re Marriage of Rooney, Case No. 109,481 (December 19, 2012)(cert. denied). This Court finds the analysis in Rooney instructive. In Rooney, the Court of Civil Appeals compared the statues dealing with child support for a minor child and Title 43 O.S.2001 § 112.1A, the statute dealing with support of an adult child with disabilities in determining whether to use the Child Support Guidelines to calculate support for an adult child with disabilities. The Rooney Court stated:

The question presented is whether a decision as to the level of parental support of adult children with disabilities pursuant to § 112.1A is an award of "child support" subject to the calculation provisions of 43 O.S. 118 and 12 O.S. 118D (2001). We find it is not.

Section 43 O.S. 112.1(A) allows suit for such an award of adult support "regardless of the age of the child . . ," while the child support statute, 43 O.S. 112 (2011) mandates provision for the support of "minor children" ("If there are minor children of the marriage, the court . . . [s]hall make provision for guardianship, custody, medical care, support and education of the children . . . ."). Further, 43 O.S. 118D is clear that base child support is based primarily upon a percentage of the combined gross income of both parents, and the number of supported children. Conversely, 43 O.S. 112.1A focuses on the specific needs of the adult child and who is caring for the child. Similarly, 43 O.S. 118B (2011) dictates that government disability benefits are not normally considered in calculating child support, while 43 O.S. 112.1A requires an assessment of "[a]ny other financial resources or other resources or programs available for the support, care, and supervision of the adult child."

Finally, the needs of children in general are clearly uniform enough that the state may generalize their support needs into a series of guidelines. By comparison, the needs of a disabled adult child are highly individualistic to that child. Section 43 O.S. 112.1A therefore concentrates on the "existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability." Such a standard clearly contemplates a more individualized inquiry into the needs of a specific child than a guideline-based approach centering on income. If the legislature intended support for an adult disabled child to be treated identically to minor child support, it would not have enacted a separate statute with substantially different requirements. We find the Child Support Guidelines are not the basis for the calculation of support for an adult disabled child.

(Emphasis added.)

¶41 As discussed in Rooney, the Legislature enacted Section 112.1A to provide the trial court a means to determine financial support for a post-majority child with disabilities that has specific, individualized needs. The standard under Section 112.1A(E) requires a more individualized inquiry into the needs of an adult child with disabilities. Section 112.1A is not susceptible to a generalized formula, such as the Child Support Guidelines, to calculate support for a person who has medical or psychological needs unique to that person. Unlike the general Child Support Guidelines, under Section 112.1A, the court must consider the factors set forth in Section 112.1A(E) in determining the amount of support required to meet the individualized needs of a post-majority child with disabilities. This consideration may exceed, or be less than, the generalized calculation based on the Child Support Guidelines depending upon the specific long-term medical or psychological needs of the child.

¶42 However, Section 112.1A does not preclude the trial court from using the Child Support Guidelines to assist in determining the relative financial responsibility of each parent for the child's needs as determined based on the Section 112.1A factors. Thus, after considering the factors stated in Section 112.1A and determining the amount of support needed for the care of the post-majority child with disabilities pursuant to Section 112.1A, the trial court may utilize the Child Support Guidelines to assist in determining the financial resources of each parent and to allocate to each parent their percentage of the support as determined under Section 112.1A needed to meet the needs of the post-majority child with disabilities.

¶43 This Court finds the trial court here erred in calculating support for SCM based solely on the Oklahoma Child Support Guidelines. The trial court decision in this matter is reversed and remanded to the trial court. The trial court, on remand, is instructed to consider the Section 112.1A factors in determining the amount of support needed for SCM. The trial court may utilize the Oklahoma Child Support Guidelines to assist in determining the percentage of the determined support under Section 112.1A for which each parent is responsible.

¶44 In relation to the child support issue, Father also argues the trial court erred in not considering all of SCM's income from his employment when determining support. At trial, Mother presented evidence that SCM made $4,000 in 2016 and maybe $8,000 to $10,000 in 2017. Father did not present any evidence to contradict this evidence. The trial court allocated $5,000 of SCM's income to Mother's available income in computing support for SCM.

¶45 Section 112.1A provides the trial court shall consider "[a]ny other financial resources . . . available for the support, care, and supervision of the adult child." Here, the trial court was presented with a definite amount of income for SCM for 2016 and a possible income amount for 2017. The trial court set SCM's income at $5,000, which was within the range of evidence presented to the trial court. This Court finds the trial court determination of income for SCM was not error. However, the trial court did err in its application of SCM's total income by attributing SCM's income to Mother. On remand, the trial court is instructed that SCM's income should be considered in the analysis of the Section 112.1A factors when determining the amount of SCM's support.

¶46 In addition, Father argues Mother is required to seek government financial assistance for SCM under Section 112.1A and the trial court must consider this assistance in making the support determination. It should be noted that the specific language of Section 112.1A does not mandate that Mother seek and obtain government financial assistance for SCM. Moreover, there is a question about whether Mother would qualify for any such assistance that is based on a means test. Thus, this Court finds this argument to be without merit.

¶47 Next, Father argues the trial court erred as a matter of law by retroactively establishing support for SCM and awarding Mother an arrearage for child support from the date Father ceased paying child support. Father alleges there is no legal authority for a retroactive application of a support obligation imposed per Title 43 O.S.2001 § 112.1A.

¶48 In response, Mother couches her action as a modification of the original child support award and contends the trial court correctly awarded an arrearage for payment of back adult child support. Mother relies on Section 112.1A(D)(3), which provides "[i]f there is a court of continuing, exclusive jurisdiction, an action under this section may be filed as a suit for modification pursuant to Section 115 of this title." Section 115 provides that an income assignment shall be contained in every child support order. Mother argues "[I]t is possible that subsection 112.1A(D)(3) should refer to 43 O.S. § 118I, regarding modification of child support orders, instead of § 115."[5] Title 43 O.S.2001 § 118I(A)(3)[6] provides that a modification order is effective upon the date the motion is filed.

¶49 The Legislature specifically provided in Section 118I(A)(3) that an order modifying child support of a minor child is effective the date the motion to modify is filed. However, the Legislature did not extend the retroactive application to Section 112.1A, the statute providing for support for an adult child with disabilities.

¶50 This Court cannot speculate as to why the Legislature made special arrangements for an income assignment in a support action involving an adult child with disabilities, but failed to provide that a motion for adult child support relates back to the date the applicant filed the motion. Nor can this Court speculate as to what the Legislature meant to do. However, this Court is bound by the statutory language drafted by the Legislature. Based on the express language of Section 112.1A, this Court finds the trial court erred in awarding Mother a judgment for past due support for SCM. The trial court's judgment for past due child support in the amount of $7,788.36 is vacated.

¶51 Next, Father argues the trial court erred in denying his Motion to Determine Overpayment, claiming he was entitled to a credit for his alleged overpayment of support after SCM ceased receiving speech therapy and tutoring. Father claims he is entitled to a credit of $2,984.39.

¶52 In denying Father's request for overpayment, the trial court held that Father did not sustain his burden of proof. The trial court further found "the [Father's] testimony to be unreliable based upon the testimony and evidence presented regarding [SCM's] needs."[7]

¶53 The trial court acts as the sole judge of the witnesses' credibility and the weight to be given their testimony and evidence. Brown v. Brown, 1993 OK CIV APP 142, ¶ 3, 867 P.2d 477, 479. Here, the trial court considered the conflicting evidence and made its decision according to its assessment of the credibility of the witnesses and the evidence. This Court will give deference to the trial court's conclusions concerning the witnesses and the evidence because it is in the best position to evaluate the witnesses' demeanor and to gauge the credibility of the evidence. Beale v. Beale, 2003 OK CIV APP 90, ¶ 6, 78 P.3d 973, 975.

¶54 This Court, based on the evidence presented in this case, finds no error in the trial court's denial of Father's Motion to Determine Overpayment.

¶55 Father also argues the trial court erred in awarding support for SCM pursuant to 43 O.S.2011 § 112.1A to Mother. Father claims Mother failed to meet her burden of proof under Section 112.1A and, therefore, the trial court's decision is against the clear weight of the evidence.

¶56 Here, Mother presented evidence relating to the four factors set forth in Section 112.1A(E). Mother testified SCM is covered on her insurance and the monthly costs are: health - $286, dental - $29.26, and vision - $6.19, for a total of $321.45. Mother also presented her Exhibit 15 -- an itemized monthly list of expenses for SCM of $2,322.24 (including insurance costs). In addition, Mother presented both expert and lay testimony regarding SCM's existing and future needs relating to his mental disabilities, including testimony of SCM's inability to care for himself and the unlikelihood of SCM ever being able to live alone. Mother also presented testimony from SCM's supervisor concerning his ability to work and his income from working. The trial court also heard testimony concerning both Mother and Father's income.

¶57 Father presented limited evidence concerning the Section 112.1A factors. In fact, Father did not present any evidence to refute Mother's evidence regarding SCM's monthly expenses and he presented limited evidence regarding SCM's ability to be self-sufficient.[8]

¶58 As previously discussed, the trial court is the sole arbiter of the witnesses' credibility and the weight to be given to their testimony and credibility. Thus, this Court finds the trial court did not err in its decision to award Mother adult child support for SCM pursuant to Title 43 O.S.2001 § 112.1A.

¶59 Father's final argument is the trial court erred in awarding Mother attorney's fees. Father argues there was not a contract or statute allowing an award of attorney's fees and, therefore, the trial court erred in awarding attorney's fees to Mother. In response, Mother contends her Motion for Parental Support was a modification of the original child support award and she is entitled to an attorney's fee award pursuant to Title 43 O.S.2001 § 110(E).[9]

¶60 In Oklahoma, the right of a party to recover attorney's fees is governed by the American Rule. Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 2000 OK 55, ¶ 46, 11 P.3d 162, 178-79. The American Rule provides that "courts are without authority to award attorney fees in the absence of a specific statute or a contractual provision allowing the recovery of such fees, with certain exceptions." Id. (citations omitted). These exceptions to the American Rule are narrowly construed. Id. One exception to the American Rule is "that where a litigant has acted in bad faith, wantonly or for an oppressive reason, the trial court, in exercise of its equitable power, may award attorney fees." Christian v. American Home Assur. Co., 1977 OK 141, ¶ 36, 577 P.2d 899, 906. Whether a litigant comes within this exception is a question for the trial court after presentation of pleadings and evidence. "[T]he inherent equitable power of a court to award attorney fees for abusive litigation practices . . . emanated from the inherent authority of courts to manage their affairs so as to achieve the orderly and timely disposition of cases." Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 2000 OK 55, ¶ 50, 11 P.3d 162, 180.

¶61 In her request for attorney's fees and costs, Mother alleged:

[Mother] spent 17 months and over $14,000.00 in an effort to secure her son [SCM] the financial support he needs and deserves. The attorney fees [Mother] incurred were exacerbated tremendously by [Father's] unreasonable conduct, unconscionable arguments, frivolous filings, repeated delays, and refusal to sign orders.

. . . .

The Court must then consider the parties' litigation conduct. In reviewing the overall conduct of the litigation, the Court should consider whether either party unnecessarily complicated or delayed the proceedings, or made the subsequent litigation more vexatious than necessary. Unfortunately, [Father's] strategy in this case appears to have been delay at all costs. . . . [Father] tried to have [Mother's] attorney disqualified by filing a ridiculous "Motion to Recuse" that had absolutely no intelligent or reasonable support. [Father] refused to sign Court orders requiring ongoing litigation to settle the journal entry.

¶62 Here, in its Order on Petitioner's Application for Attorney Fees, the trial court partially granted Mother's request for attorney's fees and costs. The court stated:

1. The Court finds that the delays and complications that arose prior to trial were well beyond those expected, even considering the busy schedules of the trial attorneys and litigants.
2. The Court finds that [Father's] conduct created additional attorney fees for Petitioner.

¶63 The trial court "considered the evidence, the statements and arguments of counsel, the docket sheet, pleadings, and procedural history of this matter" and was familiar with the proceedings and activities involved. After a thorough review of the appellate record, this Court finds the trial court did not err in exercising its equitable power and awarding Mother attorney's fees and costs incurred due to litigation-related misconduct in this action. The trial court's Order on Petitioner's Application for Attorney Fees is affirmed.[10]

CONCLUSION

¶64 Although the trial court did not err in determining Mother is entitled to support for SCM pursuant to Title 43 O.S.2001 § 112.1A, the trial court did err in using only the Oklahoma Child Support Guidelines to calculate the support. The issue of the amount of support owed under Section 112.1A is reversed and remanded to the trial court to calculate support pursuant to the instructions set forth in this Opinion. This Court further finds the trial court erred in awarding Mother a judgment for past due support for SCM and the trial court's judgment for past due child support in the amount of $7,788.36 is vacated. In all other respects, the trial court's Order for Parental Support of a Disabled Adult Child is affirmed. The trial court's Order on Petitioner's Application for Attorney Fees is affirmed.

¶65 AFFIRMED IN PART, REVERSED IN PART AND REMANDED, AND VACATED IN PART.

BARNES, P.J., and GOODMAN, J., concur.

FOOTNOTES

[1] Transcript, July 31, 2017, p. 9, lines 2-9.

[2] Transcript, July 31, 2017, pp. 88-89.

[3] Title 43 O.S.2011 § 112.1A provides:

A. In this section:
1. "Adult child" means a child eighteen (18) years of age or older.
2. "Child" means a son or daughter of any age.
B. 1. The court may order either or both parents to provide for the support of a child for an indefinite period and may determine the rights and duties of the parents if the court finds that:
a. the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support, and
b. the disability exists, or the cause of the disability is known to exist, on or before the eighteenth birthday of the child.
2. A court that orders support under this section shall designate a parent of the child or another person having physical custody or guardianship of the child under a court order to receive the support for the child. The court may designate a child who is eighteen (18) years of age or older to receive the support directly.
C. 1. A suit provided by this section may be filed only by:
a. a parent of the child or another person having physical custody or guardianship of the child under a court order, or
b. the child if the child:
(1) is eighteen (18) years of age or older,
(2) does not have a mental disability, and
(3) is determined by the court to be capable of managing the child's financial affairs.
2. The parent, the child, if the child is eighteen (18) years of age or older, or other person may not transfer or assign the cause of action to any person, including a governmental or private entity or agency, except for an assignment made to the Title IV-D agency.
D. 1. A suit under this section may be filed:
a. regardless of the age of the child, and
b. as an independent cause of action or joined with any other claim or remedy provided by this title.
2. If no court has continuing, exclusive jurisdiction of the child, an action under this section may be filed as an original suit.
3. If there is a court of continuing, exclusive jurisdiction, an action under this section may be filed as a suit for modification pursuant to Section 115 of this title.
E. In determining the amount of support to be paid after a child's eighteenth birthday, the specific terms and conditions of that support, and the rights and duties of both parents with respect to the support of the child, the court shall determine and give special consideration to:
1. Any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;
2. Whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial care or personal supervision of the adult child;
3. The financial resources available to both parents for the support, care, and supervision of the adult child; and
4. Any other financial resources or other resources or programs available for the support, care, and supervision of the adult child.
F. An order provided by this section may contain provisions governing the rights and duties of both parents with respect to the support of the child and may be modified or enforced in the same manner as any other order provided by this title.

[4] Father's argument also ignores that "[u]nder the State's constitution, the district court--in all of its division--constitutes an omni-competent, single-level, first-instance tribunal with 'unlimited original jurisdiction over all justiciable matters.'" Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 25,139 P.3d 873, 880 (citing Okla. Const. art. 7, § 7(a)). As this Court in In re Adoption of S.W., 2002 OK CIV APP 26, ¶ 19, 41 P.3d 1003, 1007-08, elaborated:

There is only one District Court in Oklahoma. Dockets are established for administrative purposes. 20 O.S. Supp. 2000, 91.2(A). Thus, there is no jurisdictional conflict between divisions or dockets of the District Court.

[5] Answer Brief of Petitioner/Appellee, filed June 25, 2018, p. 24, n.32.

[6] Section 118I(A)(3) provides:

3. An order of modification shall be effective upon the date the motion to modify was filed, unless the parties agree to the contrary or the court makes a specific finding of fact that the material change of circumstance did not occur until a later date.

[7] Order for Parental Support of a Disabled Adult Child, filed on October 5, 2017, R. 125.

[8] Father presented testimony from his sister, Amy Morgan, who testified that it was possible for SCM to live independently with training and assistance. Unlike Mother's witnesses, Ms. Morgan has not received a formal education in disabilities/psychological. Instead, she based her assessment on work experience.

[9] Section 110(E) provides:

E. The Court may in its discretion make additional orders relative to the expenses of any such subsequent actions . . . for the enforcement or modification of any interlocutory or final orders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.

[10] Father did not appeal the reasonableness of the attorney's fee award and, therefore, this issue is waived.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1911 OK CR 87, 114 P. 347, 5 Okl.Cr. 347, Adams v State
Discussed
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 142, 867 P.2d 477, 65 OBJ 578, Brown v. Brown
Discussed
 2002 OK CIV APP 26, 41 P.3d 1003, IN RE ADOPTION OF S.W
Discussed
 2003 OK CIV APP 90, 78 P.3d 973, BEALE v. BEALE
Discussed
 2015 OK CIV APP 40, 348 P.3d 1107, HALL v. DEARMON
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1934 OK 238, 33 P.2d 481, 168 Okla. 433, M.-K.-T. R. CO. v. EMBREY
Discussed
 2003 OK 68, 73 P.3d 878, MERRITT v. MERRITT
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 1996 OK 121, 932 P.2d 1091, 67 OBJ 3291, Green Bay Packaging, Inc. v. Preferred Packaging, Inc.
Discussed
 1977 OK 141, 577 P.2d 899, CHRISTIAN v. AMERICAN HOME ASSUR. CO.
Discussed
 2000 OK 55, 11 P.3d 162, 71 OBJ 3219, BARNES v. OKLAHOMA FARM BUREAU MUTUAL INS. CO.
Discussed at Length
Title 30. Guardian and Ward
 Cite
Name
Level

 30 O.S. 1-113, Appointment of Guardian - Exclusive Jurisdiction
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 112.1A, Parental Support of Children with Disabilities
Discussed at Length
 43 O.S. 110, Orders Concerning Property, Children, Support and Expenses
Cited
 43 O.S. 118I, Modification of Child Support Orders - Material Change in Circumstances
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA